1   **PALMER HUNTER & HALL**
    E. Scott Palmer (State Bar No. 155376)
2   scott@palmerhunter.com
3   Katelyn B. Hunter (State Bar No. 280568)
    katelyn@palmerhunter.com
4   One Wilshire Building
5   624 S. Grand Avenue, Suite 2200
    Los Angeles, California 90017
6   Tel:   213-629-8704
7   Fax:   213-629-8703

8

9   [Additional counsel appear on signature
10  page]

11  *Attorneys for Plaintiff*

12

13              **IN THE UNITED STATES DISTRICT COURT**

14          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15  ROBERT R. FINE, Individually and On    ) Case No.:  2:22-cv-2071
16  Behalf Of All Others Similarly Situated, )
                                             )
17              Plaintiff,                   )  **CLASS ACTION COMPLAINT**
                                             )
18      vs.                                  )
                                             )
19  KANSAS CITY LIFE INSURANCE              )
20  COMPANY,                                 )
                                             )  <u>DEMAND FOR JURY TRIAL</u>
21              Defendant.                   )
                                             )
22                                           )
                                             )
23                                           )
                                             )
24  _____     )

25

26

27

28

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Robert R. Fine ("Plaintiff"), individually and on behalf of all others similarly situated, for his Class Action Complaint against Defendant Kansas City Life Insurance Company ("Defendant"), states and alleges as follows:

### NATURE OF ACTION

1.     This is a class action for breach of contract and conversion to recover amounts that Defendant charged Plaintiff and the proposed class in excess of amounts authorized by the express terms of their life insurance policies. Plaintiff's claims are supported by the written provisions of his policy, which are materially the same as those of other policies held by the members of the proposed class.

2.     The terms of Plaintiff's life insurance policy provide for an "accumulated value" consisting of monies held in trust by Defendant for Plaintiff, and Defendant is contractually bound to deduct from the accumulated value only those charges that are explicitly identified and authorized by the policy's terms.

3.     Despite unambiguous language in the policy, which is a fully integrated insurance agreement, Defendant breaches the policy by deducting charges from Plaintiff's accumulated value in excess of the amounts specifically permitted by the policy. Defendant has breached the policy repeatedly and continues to do so.

4.     Defendant has caused material harm to Plaintiff and the proposed class by improperly draining monies they have in the accumulated values of their policies. Every unauthorized dollar taken from policy owners is one less dollar that can be used to: earn interest; pay future premiums; increase the death benefit; use as collateral for policy loans; or withdraw as cash.

5.     Plaintiff brings this case as a class action under Federal Rule of Civil Procedure 23, on behalf of himself and a class of similarly situated persons who own or owned certain universal life insurance policies issued by Defendant in the State of California:

1

All persons who own or owned a Better Life Plan, Better Life Plan Qualified, LifeTrack, AGP, MGP, PGP, Chapter One, Classic, Rightrack (89), Performer (88), Performer (91), Prime Performer, Competitor (88), Competitor (91), Executive (88), Executive (91), Protector 50, LewerMax, Ultra 20 (93), Competitor II, Executive II, Performer II, or Ultra 20 (96) life insurance policy issued in California, that was issued or administered by Defendant, or its predecessors in interest, and that was active on or after January 1, 2002.[1]

6.      This is not the first class-action lawsuit filed against Defendant on the policy forms at issue. A class of Kansas owners of the same insurance policies was recently certified in *Meek v. Kansas City Life Ins. Co.*, 19-00462-CV-W-BP (W.D. Mo.). Likewise, a class of Missouri owners of the same insurance policies was certified in *Karr v. Kansas City Life Ins. Co.*, 1916-CV26645 (Circuit Court of Jackson County, Mo.).

7.      Plaintiff seeks to recover compensatory and punitive damages, as well as declaratory and injunctive relief on behalf of himself and on behalf of the class of California policy owners.

## PARTIES

8.      Plaintiff Robert R. Fine is an individual residing in the State of California and is a citizen of the State of California.

9.      Defendant Kansas City Life Insurance Company is a corporation incorporated under the laws of the State of Missouri, with its principal place of business in Kansas City, Missouri.

---

[1] Excluded from the class is Defendant, any entity in which Defendant has a controlling interest, any of the officers, directors, or employees of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendant, anyone employed with Plaintiff's counsels' firms, any Judge to whom this case is assigned, and his or her immediate family. Also excluded from the class are policy owners falling within the classes certified in *Meek v. Kansas City Life Insurance Company*, pending in federal court in the Western District of Missouri, and *Karr v. Kansas City Life Insurance Company*, pending in Jackson County, Missouri.

2

1

## JURISDICTION AND VENUE

2    10.    This Court has jurisdiction over all causes of action asserted herein pursuant
3    to 28 U.S.C. § 1332(d) because this is a class action with diversity of citizenship between
4    parties and the matter in controversy exceeds $5,000,000, exclusive of interest and costs,
5    and the proposed Class contains more than 100 members.    Plaintiff's claims are
6    meaningfully connected to California because he purchased the policy at issue in
7    Highland, California, is a California resident, and has lived and worked in California while
8    making premium payments on the policy since it was issued to him in 1989.  Defendant
9    purposefully directed its activities toward California and California residents and availed
10   itself of the privilege of conducting business in California by: registering with the
11   California Department of Insurance in 1918 and perpetually maintaining the State of
12   California's authorization to transact insurance business in the state from the time of its
13   registration through the present; providing an agent for service of process in Glendale,
14   California; and soliciting California residents to purchase insurance policies.

15   11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because
16   Defendant is a resident of this District and a substantial portion of the events giving rise
17   to Plaintiff's causes of action occurred in this District in that, in 1989, Plaintiff was a
18   resident of this District, visited Defendant's agent in this District, signed the application
19   for life insurance in this District, made the initial premium payments in this District, and
20   established the contract with Defendant in this District.

21   ## FACTUAL BACKGROUND

22   12.    Plaintiff purchased from Defendant a "Flexible Premium Adjustable Death
23   Benefit Life Policy" bearing policy number 2442027, with an issue date of June 3, 1989,
24   and an initial specified amount of $73,500 (the "Policy"). A true and accurate copy of the
25   Policy is attached hereto as Exhibit A, and incorporated herein by reference.

26   13.    Plaintiff has always been both the "owner" and the "insured" under the
27   Policy, which remains in force.

28

3

14.     Defendant is the effective and liable insurer of the Policy, and policies meeting the class definition (the "Class Policies").

15.     The entire contract between Plaintiff and Defendant consists of the Policy, the application, and any supplemental applications. Ex. A at p. 9.

16.     The terms of the Policy are not subject to individual negotiation and are materially the same for all policy owners.

17.     Only the President, Vice President, Secretary, or Assistant Secretary of Defendant has authority to change a provision of the Policy, and any such "approved change must be endorsed on or attached to" the Policy. Ex. A at p. 13.

18.     Insurance agents do not have "authority to make any changes or waive any of the terms" of the Policy. Ex. A at p. 13; *see also* p. 6 of Plaintiff's application included in Ex. A ("No agent has the authority to waive any of the [Defendant]'s rights or rules, or to make or change any contract.").

19.     Defendant has issued and administered, and currently administers, all aspects of the Policy and Class Policies, including collecting premiums, and determining, assessing, and deducting policy charges.

20.     Plaintiff's Policy and the Class Policies are permanent life insurance, meaning their purpose is to provide insurance protection for the life of the insured.

21.     In addition to a death benefit, the Policy and Class Policies provide policy owners an investment, savings, or interest-bearing component that accumulates value over time. Although the savings component in certain of the Class Policies may be identified by a different name, it is identified in the Policy and throughout this Complaint as the "accumulated value."

22.     Generally, under universal life policies like those owned by Plaintiff and class members, premiums are deposited into the accumulated value of the policy, and the insurer deducts certain amounts directly from premium payments and monthly deductions from the accumulated value as disclosed and authorized by the policy.

4

CLASS ACTION COMPLAINT

23.    The funds held in the accumulated value are policy owner property that Defendant holds in trust for its policy owners.

24.    The Policy and Class Policies expressly identify how the accumulated value is calculated:

> On each monthly anniversary day the accumulated value will be equal to:
>
> $$A + B + C - D - E$$
>
> On any day other than a monthly anniversary day, the accumulated value will be equal to:
>
> $$A + B + C - D$$
>
> "A" is the accumulated value on the preceding monthly anniversary day.
>
> "B" is the net premiums received since the preceding monthly anniversary day.
>
> "C" is interest on "A" from the preceding monthly anniversary day plus interest on each net premium in "B" from the date of receipt of each premium at [Defendant's] Home Office.
>
> "D" is all partial withdrawals since the preceding monthly anniversary day and a pro rate portion of one month's interest to the date of calculation.
>
> "E" is the monthly deduction, as described in Section 11.4, for the month beginning on that monthly anniversary day.

Ex. A. at p. 13.

25.    The Policy expressly defines the specific charges that Defendant may assess and deduct from Plaintiff's premium payments and the Policy's accumulated value. Defendant may assess and deduct only those charges allowed by the Policy.

26.    The Policy authorizes Defendant to deduct a "Premium Expense Charge" of 5.0% from each premium paid into the Policy before deposited into the accumulated value. Ex. A at p. 5.

27.    The Policy authorizes Defendant to take from the accumulated value a "Monthly Deduction." The Monthly Deduction is:

5

The monthly deduction for a policy month is equal to the cost of insurance, as described in Section 11.5, and the cost of any additional benefits provided by riders for the policy month plus the monthly expense charge.

Ex. A at p. 13.

28.    The Policy authorizes Defendant to deduct a monthly expense charge in the amount of $5.00 per month for the first 10 policy years. Ex. A at p. 5.

29.    The Policy defines its "Expense Charges" as follows:

The amount [Defendant] deduct[s] to cover [Defendant's] expenses. The premium expense charge is the amount [Defendant] deduct[s] from each premium payment. The monthly expense charge is included in the monthly deduction. These charges are shown on page 5.

Ex. A at p. 8.

30.    The premium expense charge and monthly expense charge are the only "expense charges" identified by the Policy.

31.    In addition to setting the maximum amounts Defendant is authorized to deduct for expense charges, the Policy expressly identifies a separate cost of insurance charge deducted from the accumulated value each month.

32.    The "Cost of Insurance" is defined in the Policy as:

The charge [Defendant] make[s] for providing pure insurance protection using the current cost of insurance rates for this policy. It does not include the cost of any additional benefits provided by riders.

Ex. A at p. 8.

33.    The Policy identifies how the cost of insurance is calculated:

The cost of insurance on any monthly anniversary day is equal to:

$$Q \times (R - S)$$

"Q" is the cost of insurance rate (as described in Section 4).

6

1    "R" is the Insured's death benefit on that day divided by no less than
2    1.0036748.
3    "S" is the accumulated value, as described in Section 11.2, prior to subtracting
4    the cost of insurance.
5  Ex. A at pp. 13-14.
6        34.    The Policy discloses how the monthly cost of insurance rates ("Q" in the
7  above paragraph) will be determined, including:
8        The monthly cost of insurance rates used in calculating the cost of insurance
9        on each monthly anniversary day are based on the Insured's age, sex and risk
10       class.
11       The cost of insurance rates used will be determined by [Defendant] based on
12       [Defendant's] expectations as to future mortality experience. Any change in
13       the current cost of insurance rates will be on a uniform basis for Insureds of
14       the same age, sex and risk class whose policies have been in force the same
15       length of time. The current cost of insurance rates will never be increased to
16       recover losses incurred, or decreased to distribute gains realized by
17       [Defendant] prior to the change.
18 Ex. A at p. 6.
19       35.    Age, sex, and risk class are factors commonly understood in the context of a
20 life insurance policy to determine the mortality expectations of an insured or group or
21 class of insureds.
22       36.    Because the Policy specifically identifies age, sex, and risk class in the cost
23 of insurance provisions, and expressly states that the cost of insurance rates used will be
24 determined based on Defendant's expectations as to future mortality experience, the
25 Policy does not authorize Defendant to consider non-mortality factors in setting monthly
26 cost of insurance rates.
27       37.    Like the Policy, the Class Policies disclose similar periodic deductions that
28 Defendant is authorized to take from policy owners' accumulated values, including

7

---

specifically, cost of insurance charges that are calculated using rates that Defendant promises will be determined based on its expectations as to future mortality experience and separate, monthly expense charges.

38.    Although the Policy and Class Policies authorize Defendant to determine cost of insurance rates based on its "expectations as to future mortality experience," Defendant does not determine cost of insurance rates based on its "expectations as to future mortality experience." Defendant considers and uses other undisclosed, non-mortality factors to determine cost of insurance rates, including without limitation, expenses.

39.    By failing to determine cost of insurance rates based on its "expectations as to future mortality experience" and by taking non-mortality factors into account in determining cost of insurance rates, Defendant knowingly causes those rates to be higher than what is explicitly authorized by the Policy and Class Policies.

40.    By failing to determine cost of insurance rates based on its expectations as to future mortality experience and by taking non-mortality factors into account in determining cost of insurance rates, Defendant repeatedly breaches the Policy and Class Policies by impermissibly inflating those rates such that they exceed Defendant's "expectations as to future mortality experience."

41.    The higher cost of insurance rates used by Defendant cause the monthly cost of insurance charge to be greater than what is explicitly authorized by the Policy and Class Policies. Consequently, Defendant withdraws from the accumulated value amounts for the cost of insurance that are greater than those authorized under the Policy and Class Policies.

42.    Each of Defendant's past and future cost of insurance deductions from the accumulated values of Plaintiff and the class constitutes separate breaches of contract.

43.    As a direct and proximate result of Defendant's breaches, Plaintiff and the class have been damaged, and those damages are continuing in nature in that Defendant has deducted and will continue to deduct cost of insurance charges from the accumulated values of policy owners in unauthorized amounts.

CLASS ACTION COMPLAINT

44.    By loading cost of insurance rates with undisclosed expense factors, Defendant repeatedly breaches the Policy and Class Policies by impermissibly deducting amounts from the accumulated values of Plaintiff and the class in excess of the expense charge amounts expressly authorized by the Policy and Class Policies.

45.    Defendant's inclusion of hidden expense loads in the cost of insurance rates is not authorized under the expense provisions of the Policy. Indeed, Defendant charged policy owners the expense amounts authorized under the Policy's and Class Policies' expense provisions, and therefore, did not have authorization to deduct additional expenses through cost of insurance charges.

46.    Each of Defendant's deductions for expenses in excess of the maximum expense charge amounts constitutes separate breaches of contract.

47.    As a direct and proximate result of Defendant's breaches, therefore, Plaintiff and the class have been damaged and those damages are continuing in nature in that Defendant has deducted and will continue to deduct expenses from the accumulated values of Plaintiff and the class in amounts not authorized by the Policy and Class Policies.

48.    In an identical case involving Missouri owners of these same policies in *Karr v. Kansas City Life Insurance Co.*, 1916-CV26645 (Circuit Court of Jackson County, Mo.), partial summary judgment was granted in favor of plaintiff and the Missouri class on Defendant's liability for the same conduct on the same policy forms as alleged here. See attached as Exhibit B hereto the order granting the plaintiff's motion for partial summary judgment and denying defendant's motion for summary judgment in *Karr* (finding, in part, the relevant policy language *unambiguous in the plaintiff's favor* and further finding Defendant had admitted to the alleged wrongful conduct in breach of the policies such that liability was established and the case would proceed to a damages-only trial).

49.    Plaintiff's interpretation of the Policy and the Class Policies, that the policy language prohibits Defendant from considering undisclosed non-mortality factors in the determination of cost of insurance rates, is at least reasonable under California law. *See*

9

1   *Rosenbaum v. Philadelphia Life Insurance Co.*, No. CV 93-0834 MRP, 1994 WL
2   17118392, at *2 (C.D. Cal. Mar. 1, 1994); *see also Yue v. Conseco Life Insurance Co.*,
3   No. 2011 WL 210943, at *9 (C.D. Cal. Jan. 19, 2011).

4       50.    The nature of Defendant's conduct is such that Plaintiff and each member of
5   the class would be unaware that Defendant was engaging in wrongdoing by taking inflated
6   charges and improper amounts from accumulated values. Defendant possesses the
7   actuarial information and equations underlying the computation of rates and charges for
8   the Policy. The cost of insurance rates used to calculate cost of insurance charges are not
9   disclosed to policy owners, nor are the components or factors used to determine those
10  rates. And, even if they were, Plaintiff and the members of the class would lack the
11  knowledge, experience, or training to reasonably ascertain how Defendant calculated the
12  rates and charges included in the Policy.

13      51.    Because of its superior knowledge of the aforementioned computations,
14  Defendant was aware that Plaintiff and each member of the class did not know about the
15  improper deductions. Defendant sent Plaintiff and the class annual statements each year
16  that identified each month's cost of insurance charge while affirmatively concealing the
17  factors Defendant considered and used to determine the cost of insurance rates.
18  Concealment of its conduct and failure to disclose its conduct to Plaintiff and the class
19  constitutes fraudulent concealment and therefore tolls the statute of limitations for Plaintiff
20  and proposed class members. Plaintiff did not learn of Defendant's breaches until after he
21  had engaged counsel, who consulted an actuarial expert.

22      52.    Plaintiff did not discover, nor could he have discovered through reasonable
23  diligence, the facts establishing Defendant's breaches or conversions or the harm caused
24  thereby.

25      53.    Plaintiff reasonably relied to his detriment on Defendant's fraudulent
26  concealment of its violations.  As a result of such concealment, Plaintiff did not believe
27  that it was necessary to file a lawsuit. Plaintiff did not discover, and exercising reasonable
28  diligence could not have discovered, the facts establishing Defendant's breaches or the

harm caused thereby. Plaintiff did not learn of Defendant's breaches of the Policy supporting his claims until approximately March 2022, when he engaged counsel.

54.    Defendant is estopped from asserting a statute of limitations defense, Defendant's conduct in failing to disclose the true factors it was using to calculate the cost of insurance Rates misled Plaintiff and prevented him from learning of the factual bases for these claims for relief. Plaintiff proceeded diligently to file suit once he discovered the need to proceed.

## CLASS ACTION ALLEGATIONS

55.    Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), Plaintiff brings this action on behalf of himself and all others similarly situated, and seeks to represent the following class:

All persons who own or owned a Better Life Plan, Better Life Plan Qualified, LifeTrack, AGP, MGP, PGP, Chapter One, Classic, Rightrack (89), Performer (88), Performer (91), Prime Performer, Competitor (88), Competitor (91), Executive (88), Executive (91), Protector 50, LewerMax, Ultra 20 (93), Competitor II, Executive II, Performer II, or Ultra 20 (96) life insurance policy issued in California, that was issued or administered by Defendant, or its predecessors in interest, and that was active on or after January 1, 2002.

56.    Excluded from the class is Defendant, any entity in which Defendant has a controlling interest, any of the officers, directors, or employees of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendant, anyone employed with Plaintiff's counsels' firms, any Judge to whom this case is assigned, and his or her immediate family. Also excluded from the class are policy owners falling within the classes certified in *Meek v. Kansas City Life Insurance Company*, pending in federal court in the Western District of Missouri, and *Karr v. Kansas City Life Insurance Company*, pending in Jackson County, Missouri.

11

57.    Plaintiff's claims satisfy the numerosity, typicality, adequacy, commonality and superiority requirements under Federal Rule of Civil Procedure 23, as set forth more fully herein.

58.    The persons who fall within the class number in at least the hundreds and most likely thousands, and thus the numerosity standard is satisfied. Because class members are geographically dispersed across the country, joinder of all class members in a single action is impracticable.

59.    Class members are readily ascertainable from information and records in Defendant's possession, custody, or control. Notice of this action can readily be provided to the class.

60.    There are questions of law and fact common to the claims of Plaintiff and the class that predominate over any questions affecting only individual class members. The questions of law and fact arising from Defendant's actions that are common to the class include, without limitation:

(a)    Whether Defendant is permitted by the Policy and Class Policies to consider undisclosed non-mortality factors into account in determining monthly cost of insurance rates used to calculate cost of insurance charges;

(b)    Whether Defendant considers undisclosed non-mortality factors in determining monthly cost of insurance rates used to calculate cost of insurance charges;

(c)    Whether Defendant is permitted by the Class Policies to charge expense amounts to policy owners in excess of the amounts disclosed in the Class Policies;

(d)    Whether Defendant charged expense amounts to policy owners in excess of the amounts disclosed in the Class Policies;

(e)    Whether Defendant breached the terms of the Class Policies or converted class members' property;

(f)    Whether the class sustained damages as a result of Defendant's breaches of contract and conversions;

(g)    Whether the class is entitled to damages, restitution, and/or other equitable relief; and

(h)    Whether the class, or a subset of the class, is entitled to declaratory relief stating the proper construction and/or interpretation of the Class Policies.

61.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the claims asserted herein.

62.    Plaintiff's claims are typical of the claims of the class in that Plaintiff and the class members all purchased policies containing the same or similar limitations on the amounts that Defendant could charge its policyholders under the express terms of the Policy and Class Policies.

63.    Plaintiff will fairly and adequately protect and represent the interests of the proposed class, because his interests are aligned with, and not antagonistic to, those of the proposed class, and he is represented by counsel who are experienced and competent in the prosecution of class action litigation and have particular expertise with class action litigation on behalf of owners of universal life insurance policies.

64.    Maintenance of this action as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the class to bring a separate action. Because of the relatively small size of individual class members' claims, absent a class action, most class members would likely find the cost of litigating their claims prohibitively high and would have no effective remedy. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

13

CLASS ACTION COMPLAINT

## COUNT I: BREACH OF CONTRACT

### (Cost of Insurance Charge)

65.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

66.    Plaintiff and the class purchased life insurance policies—the Policy and Class Policies—from Defendant.

67.    The Policy and Class Policies are valid and enforceable contracts between the Defendant and Plaintiff and class members.

68.    Plaintiff and the class substantially performed their obligations under the terms of the Policy and Class Policies.

69.    Defendant considers and uses unauthorized and undisclosed non-mortality factors to determine its monthly cost of insurance rates.

70.    Defendant does not determine cost of insurance rates based on its expectations as to future mortality experience.

71.    Defendant impermissibly causes cost of insurance rates to be higher for the Policy and the Class Policies.

72.    Because Defendant calculates cost of insurance charges using monthly cost of insurance rates that are higher than those authorized by the Policy and Class Policies, Defendant has deducted and will deduct cost of insurance charges from the accumulated values of Plaintiff and the class in amounts greater than authorized by their policies.

73.    Defendant's practice of deducting charges in amounts not authorized by the Policy and Class Policies results in repeated breaches of the policies.

74.    As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages that are continuing in nature in an amount to be determined at trial.

## COUNT II: BREACH OF CONTRACT

### (Expense Charges)

14

75.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

76.    By loading monthly cost of insurance rates with undisclosed expense factors, Defendant impermissibly deducts expense charges from the accumulated values of Plaintiff and the class in amounts in excess of the maximum expense charges expressly authorized by their policies.

77.    By deducting unauthorized expense charges from the accumulated values of Plaintiff and the class, Defendant has breached and continues to breach the Policy and Class Policies.

78.    As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages that are continuing in nature in an amount to be determined at trial.

## COUNT III: BREACH OF CONTRACT
### (Improving Expectations as to Future Mortality Experience)

79.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

80.    The Policy and Class Policies require Defendant to determine cost of insurance rates based on its expectations as to future mortality experience.

81.    Although its mortality expectations have generally improved because people are living longer today than when the Policy and Class Policies were initially priced, Defendant has failed to reduce monthly cost of insurance rates for the Policy and Class Policies to reflect those improved mortality expectations.

82.    Defendant's failure to reduce these rates even though its expectations of future mortality experience improved constitutes breaches of the Policy and Class Policies.

83.    As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages that are continuing in nature in an amount to be determined at trial.

15

CLASS ACTION COMPLAINT

## COUNT IV: CONVERSION

84.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

85.    Plaintiff and the class had a property interest in the funds Defendant deducted from their accumulated values in excess of the amounts permitted by the terms of the Policy and Class Policies.

86.    By deducting cost of insurance charges and expense charges in unauthorized amounts from the accumulated values of Plaintiff and the class, Defendant assumed and exercised ownership over, and misappropriated or misapplied, specific funds held in trust for the benefit of Plaintiff and the class, without authorization or consent and in hostility to the rights of Plaintiff and class members.

87.    Defendant continues to retain these funds unlawfully without Plaintiff and class members' consent.

88.    Defendant's wrongful exercise of control over the personal property of Plaintiff and class members constitutes conversion.

89.    As a direct and proximate result of Defendant's conduct, Plaintiff and the class have been damaged, and these damages are continuing in nature.

90.    Although requiring expert testimony, the amounts of unauthorized cost of insurance charges and expense charges Defendant took from Plaintiff and the class are capable of determination, to an identified sum, by comparing Plaintiff's actual cost of insurance charge each month to a cost of insurance charge computed using a monthly cost of insurance rate determined based on Defendant's expectations as to future mortality experience.

91.    On behalf of himself and the class, Plaintiff seeks all damages and consequential damages proximately caused by Defendant's conduct.

92.    Defendant intended to cause damage to Plaintiff and the class by deducting more from their accumulated value than was authorized by the Policy and Class Policies. Defendant's conduct was, therefore, malicious and Defendant is also guilty of oppression

16

in that its systematic acts of conversion subject Plaintiff and the class to cruel and unjust hardship in conscious disregard of their rights. Plaintiff and the class are therefore entitled to punitive or exemplary damages.

## COUNT V: DECLARATORY AND INJUNCTIVE RELIEF

93.    The preceding paragraphs are incorporated by reference as if fully alleged herein.

94.    An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendant, on the other, concerning the respective rights and duties of the parties under the Policy and Class Policies.

95.    Plaintiff contends that Defendant has breached the Policy and Class Policies in the following respects:

(a)    By failing to determine cost of insurance rates based on its expectations as to future mortality experience, Defendant impermissibly increased monthly cost of insurance rates for the Policy and Class Policies and, as a result, withdrew cost of insurance charges from the accumulated values of Plaintiff and the class in an amount greater than those authorized by the Policy and Class Policies.

(b)    By inflating monthly cost of insurance rates with unauthorized expense factors, Defendant impermissibly deducted expenses from the accumulated values of Plaintiff and the class in amounts in excess of the maximum expense charges expressly authorized by the Policy and Class Policies.

(c)    By failing to reduce cost of insurance rates to reflect Defendant's improving expectations as to future mortality experience.

96.    Plaintiff therefore seeks a declaration of the parties' respective rights and duties under the Policy and Class Policies and requests the Court declare the aforementioned conduct of Defendant unlawful and in material breach of the Policy and Class Policies so that future controversies may be avoided.

97.    Pursuant to a declaration of the parties' respective rights and duties under the Policy and Class Policies, Plaintiff further seeks an injunction enjoining Defendant (1)

17

from continuing to engage in conduct in breach of the Policy and Class Policies, and from continuing to collect unlawfully inflated charges in violation of the Policy and Class Policies; and (2) ordering Defendant to comply with the terms of the Policy and Class Policies in regards to its assessment of charges against Plaintiff and class members' accumulated values.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendant as follows:

(a)    That the Court enter an order certifying the class, appointing Plaintiff as a representative of the class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

(b)    For a judgment against Defendant for the causes of action alleged against it;

(c)    For compensatory damages in an amount to be proven at trial;

(d)    For punitive and exemplary damages;

(e)    For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the Policy and Class Policies;

(f)    For appropriate injunctive relief, enjoining Defendant from continuing to engage in conduct related to the breach of the Policy and Class Policies;

(g)    For pre-judgment and post-judgment interest at the maximum rate permitted by law;

(h)    For Plaintiff's attorney's fees;

(i)    For Plaintiff's costs incurred; and

(j)    For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

CLASS ACTION COMPLAINT

1    Dated: March _29_, 2022                By:    _____

2                                                   E. Scott Palmer (State Bar No. 155376)

3                                                   scott@palmerhunter.com
                                                    Katelyn B. Hunter (State Bar No. 280568)
4                                                   katelyn@palmerhunter.com

5                                                   One Wilshire Building
                                                    624 S. Grand Avenue, Suite 2200
6                                                   Los Angeles, California 90017

7                                                   Tel:   213-629-8704
                                                    Fax:   213-629-8703
8

9                                                   John J. Schirger (*PHV* forthcoming)

10                                                  jschirger@millerschirger.com
                                                    Matthew W. Lytle (*PHV* forthcoming)
11                                                  mlytle@millerschirger.com

12                                                  Joseph M. Feierabend (*PHV* forthcoming)
                                                    jfeierabend@millerschirger.com
13                                                  **MILLER SCHIRGER, LLC**

14                                                  4520 Main Street, Suite 1570
                                                    Kansas City, Missouri 64111
15                                                  Tel:   816-561-6500

16                                                  Fax:   816-561-6501

17                                                  Patrick J. Stueve (*PHV* forthcoming)

18                                                  stueve@stuevesiegel.com
                                                    Ethan M. Lange (*PHV* forthcoming)
19                                                  lange@stuevesiegel.com

20                                                  Lindsay Todd Perkins (*PHV* forthcoming)
                                                    perkins@stuevesiegel.com
21                                                  David A. Hickey (*PHV* forthcoming)

22                                                  hickey@stuevesiegel.com

23                                                  **STUEVE SIEGEL HANSON LLP**
                                                    460 Nichols Road, Suite 200
24                                                  Kansas City, Missouri 64112

25                                                  Tel:   816-714-7100
                                                    Fax:   816-714-7101
26

27                                                  *Attorneys for Plaintiff*

28

                                                    19

                                            CLASS ACTION COMPLAINT

# EXHIBIT A

*Flexible Premium*
*Adjustable Death Benefit*
*Life Policy - Nonparticipating*

Adjustable death benefit. Death proceeds payable at death of insured prior to maturity date. Cash surrender value, if any, payable on maturity date. Flexible premiums payable until maturity date or prior death of insured.

---

Kansas City Life Insurance Company will pay the proceeds of this policy according to the provisions on this and the following pages, all of which are part of this policy. This policy is a legal contract between you and Kansas City Life Insurance Company. READ YOUR POLICY CAREFULLY.

Signed for Kansas City Life Insurance Company, a stock company, at its Home Office, 3520 Broadway, Post Office Box 419139, Kansas City, Missouri 64141-6139.

Secretary          President

*Policy Number*
9999999

*Insured*
John Doe

*10-Day Right to Examine Policy*

Please examine this policy carefully. If you are not satisfied, you may return the policy to us or to your agent within 10 days of its receipt. If returned, the policy will be void from the beginning and any premium paid will be refunded.

*Agency*
0001



J116

## GUIDE TO POLICY PROVISIONS

Page

Section  1:  Policy Data ............................................................................  3
Section  2:  Benefit and Premium Schedule ...............................................  4
Section  3:  Expense And Surrender Charges ............................................  5
Section  4:  Monthly Cost of Insurance ....................................................  6
Section  5:  Definition Of Certain Terms ...................................................  7
Section  6:  Policy Proceeds ....................................................................  8
Section  7:  General Provisions ................................................................  9

          7.1  Contract ....................................................  9
          7.2  Incontestability ...........................................  9
          7.3  Suicide .................................................... 10
          7.4  Age and Sex .............................................. 10
          7.5  Termination of Coverage ............................. 10
          7.6  Nonparticipating ........................................ 10
          7.7  Annual Report ........................................... 10

Section  8:  Premium and Reinstatement Provisions ................................. 10
Section  9:  Ownership, Assignment and Beneficiary Provisions ................ 12
Section 10:  Policy Change Provisions .................................................... 12
Section 11:  Guaranteed Policy Values .................................................... 13
Section 12:  Loan Provisions .................................................................. 14
Section 13:  Settlement Options ............................................................. 15

A copy of the original application and any additional benefits provided by rider or endorsement follow page 17.

SECTION 1. POLICY D1

POLICY NUMBER KN604
2442027

INSURED
Robert B Fine Jr

INITIAL
SPECIFIED AMOUNT
$73,500

POLICY DATE
Jun 03, 1989

MATURITY DATE*
Jun 03, 2057

BENEFICIARY
As stated in the application

OWNER
The Insured

ISSUE DATE
Jun 13, 1989

ISSUE AGE
27

SEX
Male

MINIMUM SPECIFIED AMOUNT
$25,000

MINIMUM MONTHLY PREMIUM DURING MINIMUM
PAYMENT PERIOD
$43.37

MINIMUM PAYMENT PERIOD
first 60 months following the policy date
or the effective date of any requested
increase to the specified amount

AGENCY
1176

*Coverage may expire prior to the maturity
date if current values and assumptions change
or if insufficient premium payments are made.

Page 3

SECTION 2.    BENEFIT A    PREMIUM SCHEDULE          r  "E PREPARED: 06/13/1989

        INSURED                          POLICY NUMBER        KNG04
        Robert R Fine Jr                    2442027

PLANNED PREMIUM PAYMENT:  $50.00    MONTHLY


| FORM NO. | BENEFIT DESCRIPTION | SPECIFIED AMOUNT | RISK CLASS | MONTHLY COST OF INSURANCE |
|----------|--------------------|------------------|-----------|---------------------------|
| J118 | Coverage Option A: Death benefit equals the specified amount at the time of death. (Effective: Jun 03, 1989) | $73,500 ✿ | Nonsmoker | See page 6 |
| R119 | Disability Continuance | | Nonsmoker | See rider |


✿This is the specified amount at the time this policy was issued.  The
specified amount may be changed as provided in the policy change
provisions.

SECTION 3.  EXPENSE A  SURRENDER CHARGES        'TE PREPARED: 06/13/1989

INSURED                              POLICY NUMBER      KNG04
    Robert R Fine Jr                     2442027

PREMIUM EXPENSE CHARGE
  5.0% deducted from each premium payment

MONTHLY EXPENSE CHARGE -- CURRENT
  $5.00 per month policy years  1 - 10
  $0.00 per month policy years  11 and after

MONTHLY EXPENSE CHARGE -- GUARANTEED
  $5.00 per month all policy years

PARTIAL WITHDRAWAL CHARGE
  $25

TABLE OF SURRENDER CHARGES

| POLICY YEAR * | SURRENDER CHARGE |
|---|---|
| 0-1 | $516.71 |
| 2 | 1,326.68 |
| 3 | 1,326.68 |
| 4 | 1,312.71 |
| 5 | 1,312.71 |
| 6 | 1,312.71 |
| 7 | 1,256.85 |
| 8 | 1,256.85 |
| 9 | 1,242.89 |
| 10 | 1,214.96 |
| 11 | 1,019.45 |
| 12 | 809.97 |
| 13 | 614.46 |
| 14 | 404.99 |
| 15 | 209.48 |

*Policy year means completed policy years during which the policy
is in force.

This table is based on the specified amount. When a requested
increase to the specified amount is made the surrender charges
will increase and we will provide an updated table. The increased
surrender charges will apply only if the increase is in connection
with an increase as provided in Section 10.2 or, if applicable,
under the terms of the option to increase specified amount rider.

A decrease in the specified amount will not decrease the
surrender charge.

The surrender charges listed above are applicable at the end of each
policy year. After the first policy year the surrender charge between
years will be pro-rated. The charge for the entire first policy year
will be level. After the end of the 15th policy year there will no
longer be a surrender charge.

## Section 4: Monthly Cost of Insurance

The monthly cost of insurance rates used in calculating the cost of insurance on each monthly anniversary day are based on the Insured's age, sex and risk class.

The cost of insurance rates used will be determined by us based on our expectations as to future mortality experience. Any change in the current cost of insurance rates will be on on a uniform basis for Insureds of the same age, sex and risk class whose policies have been in force the same length of time. The current cost of insurance rates will never be increased to recover losses incurred, or decreased to distribute gains realized by us prior to the change.

The cost of insurance rates used will not exceed those shown in the tables below. These rates are based on the 1980 Commissioners Standard Ordinary Smoker and Nonsmoker Mortality Table, age last birthday. The guaranteed maximum cost of insurance rates for special risk classes will be adjusted appropriately.

*Table of Guaranteed Maximum Monthly Cost of
Insurance Rates Per $1,000--Standard Rates*

| Age | Male | Female | Age | Male | Female | Age | Male | Female |
|-----|------|--------|-----|------|--------|-----|------|--------|
| 15 | $ .14669 | $ .08001 | 42 | $ .41517 | $ .31677 | 68 | $ 4.04883 | $ 2.09605 |
| 16 | $ .16336 | $ .08418 | 43 | $ .45521 | $ .34345 | 69 | $ 4.38161 | $ 2.25256 |
| 17 | $ .17503 | $ .09001 | 44 | $ .49942 | $ .37014 | 70 | $ 4.74912 | $ 2.43760 |
| 18 | $ .18420 | $ .09251 | 45 | $ .54613 | $ .39849 | 71 | $ 5.16234 | $ 2.67212 |
| 19 | $ .19004 | $ .09501 | 46 | $ .59452 | $ .42768 | 72 | $ 5.62985 | $ 2.95956 |
| 20 | $ .19337 | $ .09751 | 47 | $ .64709 | $ .45771 | 73 | $ 6.14840 | $ 3.30170 |
| 21 | $ .19337 | $ .09918 | 48 | $ .70383 | $ .49024 | 74 | $ 6.71732 | $ 3.69191 |
| 22 | $ .19004 | $ .10168 | 49 | $ .76559 | $ .52611 | 75 | $ 7.32578 | $ 4.11856 |
| 23 | $ .18670 | $ .10418 | 50 | $ .83403 | $ .56449 | 76 | $ 7.94851 | $ 4.57248 |
| 24 | $ .18170 | $ .10668 | 51 | $ .91166 | $ .60537 | 77 | $ 8.57457 | $ 5.04701 |
| 25 | $ .17586 | $ .10918 | 52 | $ .99933 | $ .65209 | 78 | $ 9.20819 | $ 5.54895 |
| 26 | $ .17253 | $ .11334 | 53 | $ 1.09871 | $ .70383 | 79 | $ 9.87149 | $ 6.09611 |
| 27 | $ .17086 | $ .11668 | 54 | $ 1.20729 | $ .75640 | 80 | $10.58673 | $ 6.70972 |
| 28 | $ .17086 | $ .12084 | 55 | $ 1.32342 | $ .81066 | 81 | $11.37460 | $ 7.40696 |
| 29 | $ .17336 | $ .12585 | 56 | $ 1.44626 | $ .86408 | 82 | $12.24905 | $ 8.20088 |
| 30 | $ .17753 | $ .13169 | 57 | $ 1.57581 | $ .91416 | 83 | $13.19604 | $ 9.11908 |
| 31 | $ .18336 | $ .13669 | 58 | $ 1.71210 | $ .96343 | 84 | $14.18421 | $10.11631 |
| 32 | $ .19087 | $ .14252 | 59 | $ 1.85845 | $ 1.01603 | 85 | $15.18033 | $11.17773 |
| 33 | $ .20087 | $ .15002 | 60 | $ 2.02158 | $ 1.07866 | 86 | $16.16033 | $12.29516 |
| 34 | $ .21255 | $ .15836 | 61 | $ 2.20568 | $ 1.15717 | 87 | $17.16810 | $13.45788 |
| 35 | $ .22672 | $ .16753 | 62 | $ 2.41331 | $ 1.25825 | 88 | $18.22021 | $14.67216 |
| 36 | $ .24339 | $ .18170 | 63 | $ 2.64531 | $ 1.38107 | 89 | $19.26842 | $15.93752 |
| 37 | $ .26424 | $ .19837 | 64 | $ 2.89921 | $ 1.51813 | 90 | $20.32834 | $17.34402 |
| 38 | $ .28758 | $ .21755 | 65 | $ 3.16834 | $ 1.66276 | 91 | $21.43307 | $18.86254 |
| 39 | $ .31427 | $ .23839 | 66 | $ 3.46019 | $ 1.80994 | 92 | $22.71710 | $20.55222 |
| 40 | $ .34512 | $ .26340 | 67 | $ 3.74228 | $ 1.95213 | 93 | $24.36889 | $22.54368 |
| 41 | $ .37847 | $ .29008 | | | | 94 | $26.62993 | $25.22305 |

*Section 4: Monthly Cost of Insurance (continued)*

### Table of Guaranteed Maximum Monthly Cost of Insurance Rates Per $1,000--Nonsmoker Rates

| Age | Male | Female | Age | Male | Female | Age | Male | Female |
|-----|------|--------|-----|------|--------|-----|------|--------|
| 0 | $ .21907 | $ .15680 | 32 | $ .12569 | $ .11084 | 64 | $ 1.67447 | $ 1.07533 |
| 1 | $ .08585 | $ .07001 | 33 | $ .13169 | $ .11501 | 65 | $ 1.85761 | $ 1.18974 |
| 2 | $ .08209 | $ .06667 | 34 | $ .13752 | $ .12001 | 66 | $ 2.05589 | $ 1.30838 |
| 3 | $ .08044 | $ .06500 | 35 | $ .14419 | $ .12585 | 67 | $ 2.26846 | $ 1.42954 |
| 4 | $ .07709 | $ .06376 | 36 | $ .15169 | $ .13419 | 68 | $ 2.49956 | $ 1.55491 |
| 5 | $ .07335 | $ .06208 | 37 | $ .16170 | $ .14419 | 69 | $ 2.75590 | $ 1.69454 |
| 6 | $ .06917 | $ .06041 | 38 | $ .17253 | $ .15502 | 70 | $ 3.04592 | $ 1.85845 |
| 7 | $ .06500 | $ .05917 | 39 | $ .18420 | $ .16670 | 71 | $ 3.37720 | $ 2.05840 |
| 8 | $ .06250 | $ .05792 | 40 | $ .19837 | $ .18086 | 72 | $ 3.75991 | $ 2.30362 |
| 9 | $ .06125 | $ .05708 | 41 | $ .21338 | $ .19587 | 73 | $ 4.19334 | $ 2.59756 |
| 10 | $ .06250 | $ .05708 | 42 | $ .22922 | $ .21087 | 74 | $ 4.67004 | $ 2.93610 |
| 11 | $ .06750 | $ .05874 | 43 | $ .24673 | $ .22588 | 75 | $ 5.18002 | $ 3.31428 |
| 12 | $ .07667 | $ .06125 | 44 | $ .26590 | $ .24089 | 76 | $ 5.71919 | $ 3.72382 |
| 13 | $ .08918 | $ .06458 | 45 | $ .28758 | $ .25757 | 77 | $ 6.28340 | $ 4.16309 |
| 14 | $ .10334 | $ .06874 | 46 | $ .31093 | $ .27508 | 78 | $ 6.87613 | $ 4.63892 |
| 15 | $ .11334 | $ .07168 | 47 | $ .33594 | $ .29426 | 79 | $ 7.51607 | $ 5.16656 |
| 16 | $ .12335 | $ .07501 | 48 | $ .36346 | $ .31427 | 80 | $ 8.22375 | $ 5.76724 |
| 17 | $ .13085 | $ .07751 | 49 | $ .39348 | $ .33678 | 81 | $ 9.01810 | $ 6.45895 |
| 18 | $ .13585 | $ .08001 | 50 | $ .42768 | $ .36180 | 82 | $ 9.91569 | $ 7.25729 |
| 19 | $ .13919 | $ .08251 | 51 | $ .46689 | $ .38932 | 83 | $10.91280 | $ 8.15937 |
| 20 | $ .14002 | $ .08418 | 52 | $ .51193 | $ .42101 | 84 | $11.99040 | $ 9.15556 |
| 21 | $ .13835 | $ .08534 | 53 | $ .56365 | $ .45604 | 85 | $13.12418 | $10.23537 |
| 22 | $ .13585 | $ .08668 | 54 | $ .62122 | $ .49191 | 86 | $14.29994 | $11.39164 |
| 23 | $ .13252 | $ .08834 | 55 | $ .68547 | $ .53028 | 87 | $15.49991 | $12.62319 |
| 24 | $ .12919 | $ .09001 | 56 | $ .75557 | $ .56865 | 88 | $16.71910 | $13.93142 |
| 25 | $ .12502 | $ .09168 | 57 | $ .82986 | $ .60620 | 89 | $17.97489 | $15.32721 |
| 26 | $ .12252 | $ .09418 | 58 | $ .91250 | $ .64374 | 90 | $19.28573 | $16.82248 |
| 27 | $ .12084 | $ .09584 | 59 | $ 1.00518 | $ .68630 | 91 | $20.68242 | $18.45266 |
| 28 | $ .12001 | $ .09834 | 60 | $ 1.10873 | $ .73637 | 92 | $22.21791 | $20.28063 |
| 29 | $ .12001 | $ .10168 | 61 | $ 1.22400 | $ .79814 | 93 | $24.04370 | $22.43826 |
| 30 | $ .12084 | $ .10418 | 62 | $ 1.35684 | $ .87493 | 94 | $26.50347 | $25.22305 |
| 31 | $ .12335 | $ .10751 | 63 | $ 1.50727 | $ .96927 | | | |

## Section 5: Definition Of Certain Terms

The following are key words used in the policy and are important in describing both your rights and ours. As you read this policy, refer back to these definitions.

### 5.1 The Insured
The person whose life is insured under this policy.

### 5.2 You, Your
The owner of this policy. The owner may be someone other than the Insured.

### 5.3 We, Our, Us
Kansas City Life Insurance Company.

### 5.4 Proceeds
The total amount we are obligated to pay under the terms of this policy.

### 5.5 Policy Date
The date from which policy months, years and anniversaries are computed. The incontestability and suicide periods for the initial specified amount are measured from this date.

### 5.6 Maturity Date
The date shown on page 3 when coverage terminates and the cash surrender value, if any, is paid.

### 5.7 Planned Premium Payments
The amount and frequency of premium payments you elected to pay in your last application. This is only an indication of your preference of future premium payments. You may change the amount

*Section 5: Definition of Certain Terms (continued)*

and frequency of premium payments at any time. However, during any minimum payment period, your payments must comply with the minimum premium requirement. The actual amount and frequency of premium payments will affect the accumulated value and the amount and duration of insurance.

### 5.8 Specified Amount
The amount of insurance coverage on the Insured. The death benefit will depend upon the coverage option in effect at the time of death.

### 5.9 Coverage Options
Option A provides a death benefit at least equal to the specified amount at the time of death. Option B provides a death benefit at least equal to the specified amount plus the accumulated value, both at the time of death.

### 5.10 Cost of Insurance
The charge we make for providing pure insurance protection using the current cost of insurance rates for this policy. It does not include the cost of any additional benefits provided by riders.

### 5.11 Expense Charges
The amount we deduct to cover our expenses. The premium expense charge is the amount we deduct from each premium payment. The monthly expense charge is included in the monthly deduction. These charges are shown on page 5.

### 5.12 Monthly Deduction
The amount we deduct on the monthly anniversary day from the accumulated value to pay the cost of insurance, expenses and the cost of any additional benefits provided by riders for the month beginning on that monthly anniversary day.

### 5.13 Monthly Anniversary Day
The day of each month when we make the monthly deduction for this policy. It is the same day of each month as shown in the policy date or the last day of the month for those months not having such a day.

### 5.14 Age
Age means the age on the Insured's last birthday as of each policy anniversary. This policy is issued at the age last birthday shown on page 3 which is the Insured's age on the policy date. If the policy date falls on the birthday of the Insured, the age will be the age attained by the Insured on the policy date.

### 5.15 Beneficiary
The beneficiary is the person you have designated in the application or in the last beneficiary designation filed with us to receive any proceeds payable under this policy at the death of the Insured.

## Section 6: Policy Proceeds

### 6.1 Payment of Proceeds
We will pay the cash surrender value to you if the Insured is living on the maturity date. If the Insured dies prior to this date, we will pay the death proceeds to the beneficiary upon receiving proof of the Insured's death while this policy is in force. When the proceeds are paid, this policy must be returned to us.

To the extent permitted by law, proceeds will not be subject to any claims of a beneficiary's creditors.

### 6.2 Amount of Proceeds Payable at Death
The amount of proceeds payable upon the Insured's death is determined according to the coverage option you have elected. The current coverage option is shown on the most recent page 4.

### Coverage Option A
The death benefit will be the greater of:

(1) the specified amount on the date of death increased by any premiums received during the period from the preceding monthly anniversary day to the date of death; or

(2) the accumulated value on the date of death multiplied by the corridor percentage as shown in the following table for the policy year in which the Insured's death occurs.

### Coverage Option B
The death benefit will be the greater of:

(1) the specified amount plus the accumulated value, both on the date of death; or

(2) the accumulated value on the date of death multiplied by the corridor percentage, as shown in the following table, for the policy year in which the Insured's death occurs.

Death benefits under either coverage option will be increased by any benefits due on the Insured's life provided by riders in force at the Insured's death and any premiums received after the date of death. Death benefits will be decreased by any unpaid policy loan and loan interest.

The purpose of this corridor percentage is to ensure that your policy will not be disqualified as a life insurance policy under Section 7702 of the Internal Revenue Code, as amended. Section 7702 states that if your accumulated value is above specified levels in relation to your death benefit, the policy will not be considered a life insurance policy for federal income tax purposes.

*Section 6: Policy Proceeds (continued)*

If changes occur in the Internal Revenue Code which would disqualify the policy as a life insurance contract, we reserve the right to amend the policy in order to make it qualify under any new federal income tax laws.

We reserve the right to refund with interest, within 60 days of receipt, any premium payment which would require an increase in the death benefit in order to comply with Section 7702 of the Internal Revenue Code, as amended.

*Corridor Percentages*

| Age | Corridor Percentage | Age | Corridor Percentage |
|-----|---------------------|-----|---------------------|
| 0-40 | 250% | 60 | 130% |
| 41 | 243% | 61 | 128% |
| 42 | 236% | 62 | 126% |
| 43 | 229% | 63 | 124% |
| 44 | 222% | 64 | 122% |
| 45 | 215% | 65 | 120% |
| 46 | 209% | 66 | 119% |
| 47 | 203% | 67 | 118% |
| 48 | 197% | 68 | 117% |
| 49 | 191% | 69 | 116% |
| 50 | 185% | 70 | 115% |
| 51 | 178% | 71 | 113% |
| 52 | 171% | 72 | 111% |
| 53 | 164% | 73 | 109% |
| 54 | 157% | 74 | 107% |
| 55 | 150% | 75-90 | 105% |
| 56 | 146% | 91 | 104% |
| 57 | 142% | 92 | 103% |
| 58 | 138% | 93 | 102% |
| 59 | 134% | 94 | 101% |

### 6.3 Proceeds Applied Under Settlement Options

Prior to the Insured's death you may elect to apply maturity or surrender proceeds under any settlement option described in Section 13. The amount of proceeds will be equal to:

(1) the cash surrender value if you choose Options 1, 2 or 3; or

(2) the accumulated value less any indebtedness if you choose any other option.

### 6.4 Interest on Death Proceeds

We will pay interest on single sum death proceeds from the date of the Insured's death until the date of payment. Interest will be at an annual rate determined by us, but never less than the rate required by the state in which this policy is delivered.

## Section 7: General Provisions

### 7.1 Contract

This policy and application and any supplemental applications are the entire contract. This contract is issued in consideration of the application and payment of the premiums. A copy of any applications is attached when the policy is issued and any supplemental applications will be attached to or endorsed on the policy when the supplemental coverage becomes effective.

In the absence of fraud, all statements made in any applications either by you or by the Insured will be considered representations and not warranties. Statements may be used to contest a claim or the validity of this policy only if they are contained in an application.

### 7.2 Incontestability

After this policy has been in force during the Insured's lifetime for two years from the policy date, we cannot contest this policy, except if the policy lapses as described in Section 8.8.

Any increase in the specified amount will not be contested after the increase has been in force during the Insured's lifetime for two years following the effective date of the increase.

*Section 7: General Provisions (continued)*

### 7.3 Suicide

If the Insured dies by suicide, while sane or insane, within two years of the policy date, the amount payable by us will be equal to the total premiums paid on the Insured's policy less the amount of any policy loans, loan interest and partial withdrawals.

If the Insured dies by suicide, while sane or insane, within two years after the effective date of any increase in the specified amount, the amount payable by us associated with such increase will be limited to the cost of insurance associated with the increase.

### 7.4 Age and Sex

If, while this policy is in force and the Insured is alive, it is determined that the age or sex of the Insured as stated on page 3 is not correct, the accumulated value under this policy will be adjusted by the difference in the actual monthly deductions made and the monthly deductions which should have been made for the correct age or sex, accumulated at the interest rates that were credited to the accumulated value.

If, after the death of the Insured and while this policy is in force, it is determined that the age or sex of the Insured as stated on page 3 is not correct, the death benefit will be the net amount at risk that the most recent mortality charge at the correct age and sex would have purchased plus the accumulated value on the last monthly anniversary day before the date of death.

### 7.5 Termination of Coverage

Coverage under this policy terminates when any of the following events occur:

(1) you request that coverage terminate;

(2) the Insured dies;

(3) the policy reaches the maturity date; or

(4) the policy lapses, as described in Section 8.8, and the grace period ends without sufficient premiums being paid.

### 7.6 Nonparticipating

This policy is nonparticipating. It will not participate in any of our profits, losses or surplus earnings.

### 7.7 Annual Report

Once a year we will send you a report about your policy. The report will show:

(1) current specified amount;

(2) current death benefit;

(3) current accumulated value;

(4) current cash surrender value;

(5) partial withdrawals since the last report;

(6) premiums paid since the last report;

(7) interest credited since the last report;

(8) all deductions since the last report;

(9) the amount of outstanding policy loans; and

(10) loan repayments, if any, since the last report.

Upon receiving your written request, we will send you a report at any other time during the year for a reasonable charge as determined by us.

## Section 8: Premium and Reinstatement Provisions

### 8.1 Payment

Your first premium must be paid when the policy is delivered. There is no insurance until the first premium is paid. All premiums after the first are payable at the Home Office or to a representative authorized to receive premiums. A receipt signed by us will be furnished on request.

### 8.2 Right to Refund

We reserve the right to refund with interest, within 60 days of receipt, any premium payment which would require an increase in the death benefit in order to comply with Section 7702 of the Internal Revenue Code, as amended.

### 8.3 Planned Premium Payments

The planned annual, semi-annual, quarterly or monthly premium payment is shown on page 4.

### 8.4 Amount and Frequency

You may change the amount and frequency of planned premium payments at any time. However, if you stop or decrease premium payments the accumulated value of your policy may not be sufficient to keep your policy from lapsing as described in Section 8.8. Each premium payment will be credited by us as described in Section 11.

We reserve the right to limit the amount of any increase in premium payment.

### 8.5 Unscheduled Additional Premiums

Additional premiums may be paid at any time. We reserve the right to limit the number and amount of additional premium payments.

### 8.6 Minimum Payment Period

The period of time, shown on page 3, during which one of the following conditions must exist to prevent your policy from lapsing:

(1) the cash surrender value of the policy on a monthly anniversary day must be sufficient

*Section 8: Premium and Reinstatement Provisions
(continued)*

to cover the monthly deduction for the month beginning on that monthly anniversary day; or

(2) total premiums paid must be equal to or greater than the minimum monthly premium times the number of monthly anniversary dates, as provided in Section 8.8.

When a requested increase to the specified amount occurs, the previous minimum payment period will terminate and your policy will be subject to a new minimum payment period. This new period will begin on the date that the increase to the specified amount becomes effective.

### 8.7 Minimum Monthly Premium

This amount, shown on page 3, is the minimum amount you must pay to keep your policy from lapsing during the minimum payment period. It may not be necessary to make minimum monthly premium payments if the policy has a cash surrender value or if past premium payments are sufficient to cover the minimum monthly premium requirement. Section 8.8 describes this requirement in detail.

When a requested increase to the specified amount occurs, the minimum monthly premium will be adjusted to cover the increased specified amount. This new premium will be applicable during the new minimum payment period resulting from this increase.

### 8.8 Grace Period

The conditions which will result in your policy lapsing will vary, as follows, depending on whether the minimum payment period shown on page 3 has expired.

#### During the Minimum Payment Period

The policy will lapse if there is no cash surrender value and if the accumulated premiums paid as of each monthly anniversary day are less than:

$$X + Y + Z$$

"X" is the minimum monthly premium shown on page 3 times the number of monthly anniversary dates during which the policy has been in force before any requested increases to the specified amount.

If requested increases to the specified amount have occurred, "X" will also include each new minimum monthly premium after an increase times the number of monthly anniversary dates during which each applicable increase to the specified amount has been in force.

"Y" is the amount of current indebtedness.

"Z" is the total amount of partial withdrawals.

A grace period of 31 days from the date your policy lapses will be allowed to pay total premiums equal to or greater than $X + Y + Z$.

#### After the Minimum Payment Period

The policy will lapse if the cash surrender value on a monthly anniversary day will not cover the monthly deduction for the month beginning on that monthly anniversary day.

A grace period of 31 days from the date your policy lapses will be allowed to pay a premium that will provide enough cash surrender value to cover the balance of the monthly deduction.

At least 30 days before the end of the grace period, we will mail notice of the grace period and of the premium sufficient to prevent the policy from lapsing. This notice will be mailed to your last known address recorded with us and to any assignee of record.

The cash surrender value and monthly deduction are described in Section 11. If the Insured dies during the grace period, any past due monthly deductions will be deducted from the proceeds.

### 8.9 Reinstatement

If the grace period expires without sufficient premiums being paid, the policy may be reinstated within five years after the expiration of the grace period. Reinstatement is subject to:

(1) receipt of evidence of insurability of the Insured satisfactory to us; and

(2) payment of the premium amount which would have been sufficient to keep the policy from lapsing, as described in Section 8.8, with interest from the date of lapse; plus:

(a) two months of minimum monthly premium if the policy lapsed during the minimum payment period; or

(b) two monthly deductions if the policy lapsed after the minimum payment period.

Interest at the rate of 6% per year compounded annually on any past due premiums and indebtedness will be payable to the date of reinstatement. The policy will be reinstated on the monthly anniversary day after the date we approve the reinstatement.

Section 8: Premium and Reinstatement Provisions
(continued)

If lapse occurs during the minimum payment period or during a time when any surrender charges are applicable, the balance of these periods at the time of lapse will resume upon reinstatement.

Your policy cannot be reinstated if it has been surrendered for its cash surrender value.

If the policy lapses and it is reinstated, we cannot contest any statements made in a reinstatement application after the policy has been in force during the Insured's lifetime for two years from the date of the reinstatement application.

## Section 9: Ownership, Assignment and Beneficiary Provisions

### 9.1 Ownership
The Insured is the owner unless otherwise provided in the application. As owner, you may exercise every right provided by your policy. These rights and privileges end at the Insured's death.

The consent of the beneficiary is required to exercise these rights if:

(1) you have not reserved the right to change the beneficiary; or

(2) you have named a creditor beneficiary.

### 9.2 Change of Ownership
You may change the ownership of this policy by giving written notice to us at our Home Office. The change will be effective on the date your request was signed but will have no effect on any payment made or other action taken by us before we receive it. We may require that the policy be submitted for endorsement to show the change.

### 9.3 Assignment
An assignment is a transfer of some or all of your rights under this policy. No assignment will be binding on us unless made in writing and filed at our Home Office. We assume no responsibility for the validity or effect of any assignment.

### 9.4 Beneficiary
The beneficiary is shown on the application or in the last beneficiary designation filed with us. Death proceeds will be paid to the beneficiary except as provided in this Section.

If any beneficiary dies before the Insured, that beneficiary's interest will pass to any other beneficiaries according to their respective interest. If all beneficiaries die before the Insured, we will pay the death proceeds to you, if living, otherwise to your estate or legal successors.

Unless you have waived the right to do so, you may change the beneficiary by filing a written request in a form satisfactory to us. In order to be effective, the written request for change of beneficiary must be signed while your policy is in force and the Insured is living. The change will be effective on the date your request was signed but will have no effect on any payment made or other action taken by us before we receive it.

The interest of any beneficiary will be subject to:

(1) any assignment of this policy which is binding on us; and

(2) any optional settlement agreement in effect at the Insured's death.

### 9.5 Simultaneous Death of Beneficiary and Insured
Death proceeds will be paid as though the beneficiary died before the Insured if:

(1) the beneficiary dies at the same time as or within 15 days of the Insured's death; and

(2) we have not paid the proceeds to the beneficiary within this 15-day period.

## Section 10: Policy Change Provisions

### 10.1 Right to Change
You may request the changes provided for in this Section at any time. Your request must be in writing to us at our Home Office.

### 10.2 Changes in Specified Amount
The specified amount may be changed, subject to the conditions outlined below.

#### Decreases in the Specified Amount
Any decrease will be effective on the monthly anniversary day on or next following the date we receive your application for decrease. Any decrease will be applied first against any increases to the specified amount in the reverse order in which they were made. Any remaining decrease will then be applied against the initial specified amount.

The surrender charge will continue to be based on the specified amount prior to the decrease.

The specified amount remaining in force after any requested decrease may not be less than the minimum specified amount shown on page 3.

*Section 10: Policy Change Provisions (continued)*

### Increases in the Specified Amount

A request for an increase in the specified amount will be subject to the following requirements:

(1) an application satisfactory to us must be submitted;

(2) evidence of insurability satisfactory to us must be submitted; and

(3) the increased monthly deduction will not cause the policy to lapse, as described in Section 8.8, as of the effective date of the increase.

After an increase, additional surrender charges will apply to your policy. We will send you a new Table of Surrender Charges.

In addition, the previous minimum payment period will terminate, if in effect, and your policy will be subject to a new minimum payment period. A new minimum monthly premium will be applicable during the new minimum payment period. We will send you current policy data after an increase in the specified amount.

### 10.3 Change in Coverage Option

If the coverage option is Option B, it may be changed to Option A. The new specified amount will be the death benefit as of the effective date of change. The effective date of change will be the monthly anniversary day on or next following the date we receive your application for change.

If the coverage option is Option A, it may be changed to Option B subject to evidence of insurability satisfactory to us. The new specified amount will be the death benefit less the accumulated value as of the effective date of change. The effective date of change will be the monthly anniversary day on or next following the date we approve your application for change.

### 10.4 Changing Your Policy

Any change to your policy that is not provided for in this Section must be approved by us and signed by our President, Vice President, Secretary or Assistant Secretary.

An approved change must be endorsed on or attached to your policy. No agent has the authority to make any changes or waive any of the terms of your policy.

## Section 11: Guaranteed Policy Values

### 11.1 Net Premium

The net premium is the premium payment received less the premium expense charge shown on page 5.

### 11.2 Accumulated Value

On each monthly anniversary day the accumulated value will be equal to:

$$A + B + C - D - E$$

On any day other than a monthly anniversary day, the accumulated value will be equal to:

$$A + B + C - D$$

"A" is the accumulated value on the preceding monthly anniversary day.

"B" is the net premiums received since the preceding monthly anniversary day.

"C" is interest on "A" from the preceding monthly anniversary day plus interest on each net premium in "B" from the date of receipt of each premium at our Home Office.

"D" is all partial withdrawals since the preceding monthly anniversary day and a pro rata portion of one month's interest to the date of calculation.

"E" is the monthly deduction, as described in Section 11.4, for the month beginning on that monthly anniversary day.

### 11.3 Interest Rate

The guaranteed interest rate used in the calculation of the accumulated value is 4.5%. We may use an interest rate in excess of the guaranteed rate.

The interest rate applied to the accumulated value securing any policy loan will be 4.5%.

### 11.4 Monthly Deduction

The monthly deduction for a policy month is equal to the cost of insurance, as described in Section 11.5, and the cost of any additional benefits provided by riders for the policy month plus the monthly expense charge.

### 11.5 Cost of Insurance

The cost of insurance on any monthly anniversary day is equal to:

$$Q \times (R - S)$$

"Q" is the cost of insurance rate (as described in Section 4.)

*Section 11: Guaranteed Policy Values (continued)*

"R" is the insured's death benefit on that day divided by no less than 1.0036748.

"S" is the accumulated value, as described in Section 11.2, prior to subtracting the cost of insurance.

If the coverage option as shown in the most recent page 4 is Option A and if there have been increases in the specified amount, the accumulated value of this policy described in "S" above will be allocated between the specified amount provided under the original application and subsequent increases. The accumulated value will be allocated first to the specified amount provided under the original application with any excess allocated to any increases in the order in which they were made.

### 11.6 Cost of Additional Benefits Provided by Riders

The cost of additional benefits provided by riders will be specified in those riders.

### 11.7 Cash Surrender

You may surrender this policy for its cash surrender value at any time, by submitting a signed request to us.

The cash surrender value of this policy is:

(1) the accumulated value of this policy at the time of surrender; less

(2) any applicable surrender charge (shown on page 5); less

(3) any indebtedness on this policy.

We will also refund any cost of insurance deducted for the period beyond the date of policy surrender.

We have the right to postpone making a surrender payment to you for not more than six months from the date we receive your request.

If a surrender is requested under this provision within 31 days after a policy anniversary, the cash surrender value will not be less than the cash surrender value on that anniversary, less any policy loans or partial withdrawals made on or after such anniversary.

### 11.8 Partial Withdrawals

You may withdraw a part of the cash surrender value of the policy at any time, by submitting a signed request to us. At the time of a partial withdrawal we will add the partial withdrawal charge shown on page 5 to the amount of the partial withdrawal.

Under Option A, the specified amount and the accumulated value will be reduced by the amount of the partial withdrawal. We reserve the right to require that the specified amount remaining in force after any partial withdrawal be at least equal to the minimum specified amount shown on page 3.

Under Option B, the accumulated value will be reduced by the amount of the partial withdrawal.

We have the right to postpone making a partial withdrawal payment to you for not more than six months from the date we receive your request.

### 11.9 Extended Term Insurance

If your policy lapses, as described in Section 8.8, the cash surrender value will be applied to continue the specified amount and any additional benefits provided by riders for a portion of the next month.

The amount of extended term insurance is determined according to the coverage option in effect as of the date insurance is extended under this option.

This provision will not continue the policy beyond the maturity date.

### 11.10 Basis of Computation

Guaranteed values and reserves are based on the 1980 Commissioners Standard Ordinary Smoker and Nonsmoker Mortality Tables, age last birthday. Our calculations are based on an interest rate of 4.5% per year.

Reserves will never be less than those provided for using the commissioners reserve valuation method.

Guaranteed values under this policy are equal to, or greater than, the minimum values required by law of the state in which your policy is delivered. A detailed statement of the method of computing these values has been filed with the insurance department of that state.

## Section 12: Loan Provisions

### 12.1 Policy Loans

You may obtain a policy loan by submitting a signed request to us. This policy assigned to us is the only security needed.

We have the right to postpone making a policy loan to you for not more than six months from the date we receive your request.

You may repay your policy loan in full or in part while your policy is in force prior to the death of the insured. A loan that exists at the end of the grace period may not be repaid unless this policy is reinstated. A payment will be credited as a loan repayment only if so designated.

*Section 12: Loan Provisions (continued)*

### 12.2 Amount of Loan Available

The amount of loan available will be equal to the cash surrender value of the policy less any loan interest to the next policy anniversary.

### 12.3 Loan Interest

Interest will be charged on a policy loan from the date of the loan at the rate of 8% per year. We may establish a lower rate for any period for which the policy loan is outstanding.

Interest is payable at the end of each policy year and on the date the loan is repaid. If interest is not paid, the loan will be increased by that amount.

### 12.4 Indebtedness

Indebtedness means all unpaid policy loans and accrued loan interest. Any outstanding indebtedness will be deducted from the policy proceeds.

Your policy is terminated whenever your total indebtedness equals or exceeds the accumulated value less any applicable surrender value. We will mail notice to your last known address recorded with us and to the holder of any assignment of record at least 31 days before such termination.

## Section 13: Settlement Options

### 13.1 Payment Options

You may apply proceeds of $2,000 or more which are payable under this policy to any of the following options:

#### Option 1: Interest Payments

We will make interest payments to the payee annually or monthly as elected. Interest on the proceeds will be paid at the guaranteed rate of 3.5% per year and may be increased by additional interest. The proceeds and any unpaid interest may be withdrawn in full at any time.

#### Option 2. Installments of a Specified Amount

We will make annual or monthly payments until the proceeds plus interest are fully paid. Interest on the proceeds will be paid at the guaranteed rate of 3.5% per year and may be increased by additional interest. The present value of any unpaid installments may be withdrawn at any time.

#### Option 3. Installments For a Specified Period

Payment of the proceeds may be made in equal annual or monthly payments for a specified number of years. Interest on the proceeds will be paid at the guaranteed rate of 3.5% per year and may be increased by

additional interest. The present value of any unpaid installments may be withdrawn at any time. The amount of each payment is shown in Table A.

#### Option 4. Life Income

We will pay an income during the payee's lifetime. A minimum guaranteed payment period may be chosen. Payments received under the Installment Refund Option will continue until the total income payments received equal the proceeds applied. The amount of each payment is shown in Table B.

#### Option 5. Joint and Survivor Income

We will pay an income during the lifetime of two persons and will continue to pay the same income as long as either person is living. The minimum guaranteed payment period will be ten years. The amount of each payment is shown in Table C.

If the payout rates in use by us at the time proceeds become payable are more favorable than those shown in Options 4 and 5, we will provide a life income using the more favorable rates.

### 13.2 Payee

The payee is the person receiving proceeds under a settlement option. The payee can be you, the Insured or a beneficiary. We will require satisfactory proof of the payee's age under Options 4 and 5.

The contingent payee is the person named to receive proceeds if the payee is not alive.

### 13.3 Minimum Payments

The payment under any settlement option must be at least $25. We may make payments less frequently so that each payment is at least $25.

### 13.4 Choice of Options

You may choose an option by written notice during the Insured's lifetime. If a settlement option is not in effect at the Insured's death, a choice may be made by the beneficiary.

### 13.5 Availability of Options

These options are only available with our consent if proceeds are payable to an executor, administrator, trustee, corporation, partnership or association.

### 13.6 Operative Date

The first payment under Option 1 will be payable at the end of the first interest period. The first payment under Options 2 through 5 will be made on the date proceeds become payable.

*Section 13: Settlement Options (continued)*

### 13.7 Death of Payee

At the death of the payee, any payments remaining will be paid according to the terms of the settlement option chosen, unless the contingent payee elects in writing to receive the present value of any remaining guaranteed payments in a single sum.

If a contingent payee has not been named or does not survive the payee, the following amounts will be paid in one sum to the estate of the payee:

    (1) any amount left on deposit under Option 1; and

    (2) the present value of any remaining guaranteed payments under Options 2 through 5.

If you have not named a contingent payee, or if every contingent payee named by you dies before the payee, you may, by written notice to us, name a new contingent payee. The new contingent payee will receive any amount that would otherwise have been payable to the payee's estate.

### 13.8 Claims of Creditors

To the extent permitted by law, proceeds will not be subject to any claims of a payee's creditors.

## TABLE A - INSTALLMENT OPTION*
### For Each $1,000 of Proceeds Applied

| Term of Years | Annual | Monthly | Term of Years | Annual | Monthly | Term of Years | Annual | Monthly |
|---|---|---|---|---|---|---|---|---|
| 1 | $1000.00 | $84.85 | 11 | $107.34 | $9.09 | 21 | $65.74 | $5.56 |
| 2 | 508.60 | 43.05 | 12 | 99.98 | 8.46 | 22 | 63.70 | 5.39 |
| 3 | 344.86 | 29.19 | 13 | 93.78 | 7.94 | 23 | 61.85 | 5.24 |
| 4 | 263.04 | 22.27 | 14 | 88.47 | 7.49 | 24 | 60.17 | 5.09 |
| 5 | 213.99 | 18.12 | 15 | 83.89 | 7.10 | 25 | 58.62 | 4.96 |
| 6 | 181.32 | 15.35 | 16 | 79.89 | 6.76 | 26 | 57.20 | 4.84 |
| 7 | 158.01 | 13.38 | 17 | 76.37 | 6.47 | 27 | 55.89 | 4.73 |
| 8 | 140.56 | 11.90 | 18 | 73.25 | 6.20 | 28 | 54.69 | 4.63 |
| 9 | 127.00 | 10.75 | 19 | 70.47 | 5.97 | 29 | 53.57 | 4.53 |
| 10 | 116.18 | 9.83 | 20 | 67.98 | 5.75 | 30 | 52.53 | 4.45 |

## TABLE B - LIFE INCOME OPTIONS*
### Monthly Income For Each $1,000 of Proceeds Applied

| | MALE Minimum Guaranteed Payment Period | | | | FEMALE Minimum Guaranteed Payment Period | | | |
|---|---|---|---|---|---|---|---|---|
| Age | None | 120 Months | 240 Months | Installment Refund | None | 120 Months | 240 Months | Installment Refund |
| 50 | $4.79 | $4.72 | $4.50 | $4.54 | $4.35 | $4.33 | $4.23 | $4.24 |
| 51 | 4.87 | 4.80 | 4.56 | 4.61 | 4.43 | 4.40 | 4.29 | 4.29 |
| 52 | 4.97 | 4.88 | 4.61 | 4.66 | 4.50 | 4.47 | 4.35 | 4.36 |
| 53 | 5.06 | 4.96 | 4.67 | 4.78 | 4.58 | 4.54 | 4.40 | 4.42 |
| 54 | 5.17 | 5.05 | 4.73 | 4.83 | 4.66 | 4.62 | 4.47 | 4.49 |
| 55 | 5.27 | 5.15 | 4.79 | 4.92 | 4.75 | 4.70 | 4.53 | 4.56 |
| 56 | 5.39 | 5.25 | 4.85 | 5.00 | 4.85 | 4.79 | 4.59 | 4.64 |
| 57 | 5.51 | 5.35 | 4.92 | 5.09 | 4.94 | 4.88 | 4.66 | 4.72 |
| 58 | 5.63 | 5.46 | 4.98 | 5.19 | 5.05 | 4.97 | 4.73 | 4.81 |
| 59 | 5.77 | 5.57 | 5.04 | 5.29 | 5.16 | 5.07 | 4.80 | 4.90 |
| 60 | 5.91 | 5.69 | 5.10 | 5.39 | 5.27 | 5.18 | 4.87 | 4.99 |
| 61 | 6.06 | 5.81 | 5.16 | 5.50 | 5.40 | 5.29 | 4.94 | 5.09 |
| 62 | 6.22 | 5.94 | 5.22 | 5.62 | 5.53 | 5.41 | 5.01 | 5.20 |
| 63 | 6.39 | 6.07 | 5.28 | 5.74 | 5.67 | 5.53 | 5.08 | 5.31 |
| 64 | 6.58 | 6.21 | 5.33 | 5.87 | 5.82 | 5.66 | 5.15 | 5.43 |
| 65 | 6.77 | 6.36 | 5.38 | 6.01 | 5.98 | 5.80 | 5.22 | 5.55 |
| 66 | 6.99 | 6.51 | 5.44 | 6.16 | 6.16 | 5.95 | 5.29 | 5.69 |
| 67 | 7.21 | 6.67 | 5.48 | 6.31 | 6.36 | 6.11 | 5.35 | 5.83 |
| 68 | 7.46 | 6.84 | 5.53 | 6.47 | 6.57 | 6.28 | 5.41 | 5.99 |
| 69 | 7.72 | 7.01 | 5.57 | 6.65 | 6.80 | 6.45 | 5.46 | 6.15 |
| 70 | 8.00 | 7.18 | 5.60 | 6.83 | 7.04 | 6.64 | 5.51 | 6.32 |
| 71 | 8.31 | 7.36 | 5.63 | 7.03 | 7.32 | 6.83 | 5.56 | 6.51 |
| 72 | 8.64 | 7.54 | 5.66 | 7.23 | 7.61 | 7.03 | 5.60 | 6.71 |
| 73 | 8.99 | 7.72 | 5.69 | 7.45 | 7.93 | 7.23 | 5.63 | 6.92 |
| 74 | 9.37 | 7.91 | 5.70 | 7.69 | 8.28 | 7.44 | 5.66 | 7.15 |
| 75 | 9.79 | 8.09 | 5.72 | 7.94 | 8.66 | 7.65 | 5.68 | 7.39 |

## TABLE C - JOINT AND SURVIVOR OPTION*
### Monthly Income - Ten Year Guaranteed Payment Period
### For Each $1,000 of Proceeds Applied

| Male Age | Female Age | | | | | |
|---|---|---|---|---|---|---|
| | 50 | 55 | 60 | 65 | 70 | 75 |
| 50 | $4.01 | $4.16 | $4.31 | $4.44 | $4.55 | $4.63 |
| 55 | 4.10 | 4.31 | 4.51 | 4.70 | 4.87 | 5.00 |
| 60 | 4.17 | 4.43 | 4.70 | 4.97 | 5.23 | 5.43 |
| 65 | 4.23 | 4.53 | 4.86 | 5.23 | 5.61 | 5.93 |
| 70 | 4.27 | 4.60 | 4.99 | 5.46 | 5.97 | 6.46 |
| 75 | 4.30 | 4.65 | 5.08 | 5.62 | 6.27 | 6.95 |

*Amounts not shown for available options will be furnished on request.

1176    17

*The Duchess, protecting her own.*

# KANSAS CITY LIFE
## INSURANCE COMPANY

Since 1895

## *Disability Continuance Of Insurance Rider*

### The Benefit

Kansas City Life Insurance Company will provide additions to the accumulated value to continue insurance during the total disability of the Insured.

If the Insured becomes totally disabled as defined below, the Company will add an amount each month during the continuance of such total disability to the accumulated value of this policy. These additions to the accumulated value will allow insurance to continue throughout the disability.

The amount added to the accumulated value for each monthly anniversary following the date of disability is calculated as follows:

$$(A \times B) + C + D$$

"A" is the death benefit on the date of disability divided by no less than 1.0036748 minus the accumulated value on the date of disability.

"B" is the cost of insurance rate used in calculating the cost of insurance for the policy.

"C" is the cost of any additional benefits provided by riders.

"D" is the current monthly expense charge.

For purposes of crediting interest, the additions to accumulated value described above will be assumed to have been made on the monthly anniversary for the policy month for which they apply.

### Minimum Payment Period

The minimum payment period will be suspended when the Insured becomes totally disabled. The balance of this period at the time of disability will resume when the Insured recovers.

### Definition of Total Disability

Total disability means disability which prevents the Insured from engaging in any gainful business or occupation for which the Insured is, or could reasonably become, qualified by reason of education, training or experience.

To engage in a gainful business or occupation, either prior to or during any period of total disability, also includes attending school on a full-time basis or performing daily household tasks as a homemaker.

### Total Disability Benefit Requirements

Additions to the accumulated value will be provided when the Insured's total disability satisfies the following:

(1) the regular attendance by a licensed physician other than the Insured;

(2) that disability is the result of sickness which first manifests itself, or bodily injury which occurs, while this rider is in force;

(3) that disability has continued for six consecutive months; and

(4) that disability began prior to the policy anniversary on which the Insured's age is 60.

### Loss of Sight or Limbs

Loss of sight or limbs means the permanent and total loss of:

(1) the sight of both eyes;

(2) the use of both hands;

(3) the use of both feet; or

(4) the use of one hand and one foot.

Loss of sight or limbs will be considered a total disability even if the Insured returns to work.

However, loss of sight or limbs must occur or first manifest itself after the effective date of this rider and while this rider is in force in order for benefits to be paid under this provision.

### Risks Not Covered

No benefits will be provided under this rider if disability results from:

(1) intentionally self-inflicted injury; or

(2) war, or any act of war, whether declared or undeclared.

R119

### Proof of Disability

We must receive satisfactory written proof of total disability at our Home Office before benefits are provided. Proof must be given to us:

(1) during the lifetime and continued total disability of the Insured;

(2) within one year after total disability begins; and

(3) no later than one year after the policy anniversary on which the Insured's age is 60.

We will provide the appropriate additions to the accumulated value although proof was not given within the time provided above if it is shown that it was given as soon as was reasonably possible.

### Proof of Continued Disability

After initial proof of total disability, we may require, at reasonable intervals, proof that the Insured is still totally disabled. However, after two years, we will not require proof more often than once a year. As part of proof, we may require the Insured to be examined by a medical examiner of our choice and at our expense.

### Notice of Recovery

You should give immediate notice to us when the Insured recovers from total disability or returns to work.

### Cost of Disability Continuance

The cost of disability continuance is determined on a monthly basis. The cost of disability continuance rate as described in the Table of Guaranteed Maximum Monthly Cost of Disability Continuance Rates Per $1,000 is added to the Insured's cost of insurance rate. The cost of insurance is then determined as provided in the policy using the increased rates. The cost of disability continuance for the policy and this rider is the excess of the cost of insurance including this provision, over the cost of insurance determined in the absence of this provision. If the policy contains an Other Insured Rider the cost of disability continuance for this rider will be determined using the Other Insured's specified amount per thousand and the Insured's disability continuance of insurance rate. The cost of disability continuance for any other additional benefits provided by rider is shown on page 4 of the policy.

The cost of disability continuance for the policy, this rider and any other additional benefits provided by rider will be deducted monthly from the accumulated value as provided in Section 11.4 of the policy until the policy anniversary on which the Insured's age is 60.

### General Provisions

The following provisions apply to this rider:

(1) this rider is made a part of the policy to which it is attached;

(2) this benefit is subject to all the provisions of this rider and the applicable policy provisions; and

(3) the effective date of this rider is the same as that of the policy unless this rider is added at a later date. The effective date of this rider will then be specified in the rider description on page 4 of the policy. The time period of the incontestability provision of the policy will apply to this rider from the effective date of this rider.

### Cancellation

This rider may be cancelled by you on any monthly anniversary day. Your request must be in writing and filed with us prior to the monthly anniversary day. We may require that the policy be submitted for endorsement to show the cancellation.

### Termination of Rider

This rider terminates on the earliest of:

(1) the date the policy terminates for any reason;

(2) the date this rider is cancelled by you; or

(3) the policy anniversary on which the Insured's age is 60; however, such termination will not affect an eligible claim for disability occuring before age 60.

R118

### Table of
### Guaranteed Maximum Monthly Cost Of
### Disability Continuance Rates Per $1,000

The cost of this rider is based on the Insured's age, sex and risk class for this rider. Age means the age on the Insured's last birthday. Monthly cost of disability continuance rates actually used will be determined by us based on our expectations as to future disability experience, but these rates will never be greater than those shown below. However, the guaranteed maximum monthly cost of disability continuance for special risk classes will be adjusted appropriately.

| Age | Male Rate | Female Rate | Age | Male Rate | Female Rate |
|---|---|---|---|---|---|
| 15 | 0.01371 | 0.01755 | 38 | 0.03191 | 0.03984 |
| 16 | 0.01371 | 0.01755 | 39 | 0.03561 | 0.04211 |
| 17 | 0.01371 | 0.01755 | 40 | 0.03939 | 0.04478 |
| 18 | 0.01371 | 0.01755 | 41 | 0.04259 | 0.04932 |
| 19 | 0.01371 | 0.01755 | 42 | 0.04914 | 0.05421 |
| 20 | 0.01371 | 0.01755 | 43 | 0.05619 | 0.06155 |
| 21 | 0.01389 | 0.01809 | 44 | 0.06134 | 0.06908 |
| 22 | 0.01404 | 0.01862 | 45 | 0.07161 | 0.07890 |
| 23 | 0.01415 | 0.02033 | 46 | 0.08318 | 0.08921 |
| 24 | 0.01421 | 0.02072 | 47 | 0.09492 | 0.10166 |
| 25 | 0.01422 | 0.02081 | 48 | 0.10823 | 0.11340 |
| 26 | 0.01436 | 0.02096 | 49 | 0.12507 | 0.12872 |
| 27 | 0.01598 | 0.02259 | 50 | 0.14364 | 0.14637 |
| 28 | 0.01605 | 0.02276 | 51 | 0.17424 | 0.17282 |
| 29 | 0.01764 | 0.02441 | 52 | 0.20714 | 0.20520 |
| 30 | 0.01781 | 0.02469 | 53 | 0.24693 | 0.24240 |
| 31 | 0.01961 | 0.02643 | 54 | 0.29309 | 0.28379 |
| 32 | 0.02127 | 0.02825 | 55 | 0.34137 | 0.32898 |
| 33 | 0.02163 | 0.03018 | 56 | 0.38487 | 0.35424 |
| 34 | 0.02361 | 0.03203 | 57 | 0.42768 | 0.38142 |
| 35 | 0.02562 | 0.03380 | 58 | 0.47292 | 0.41177 |
| 36 | 0.02820 | 0.03591 | 59 | 0.52406 | 0.44534 |
| 37 | 0.02999 | 0.03777 | | | |

Signed for Kansas City Life Insurance Company, a stock company, at its Home Office, 3520 Broadway, Post Office Box 419139, Kansas City, Missouri 64141-6139.

*H. Marshall Chatfield*

Secretary

Chairman of the Board
and President



## KANSAS CITY LIFE
## INSURANCE COMPANY

### *Paid-up Insurance Benefit Endorsement*

This Endorsement forms a part of the policy to which it is attached.

You may elect to use the cash surrender value of your policy to purchase a single premium paid-up life insurance benefit. The minimum face amount for the paid-up benefit is $5,000. In order to elect this paid-up benefit you must have enough cash surrender value to purchase at least a $5,000 face amount.

The paid-up benefit purchase rates used will be determined by us based on our expectations as to future mortality experience, but the rates will not exceed those shown in the tables below. Any change in these rates will be on a uniform basis for Insureds of the same sex, age and risk class whose policies have been in force the same length of time. The current rates will never be increased to recover losses incurred, or decreased so as to distribute gains realized by us prior to the change. The guaranteed rates for special risk classes will be adjusted appropriately.

*Table of Guaranteed Paid-up Insurance Benefit Rates per $1,000*
*Standard Purchase Rates*

| Age | Male | Female | Age | Male | Female | Age | Male | Female |
|-----|------|--------|-----|------|--------|-----|------|--------|
| 15 | $142.99 | $116.65 | 42 | $326.63 | $270.88 | 69 | $662.65 | $585.33 |
| 16 | $146.95 | $120.05 | 43 | $337.15 | $279.43 | 70 | $675.20 | $600.36 |
| 17 | $150.94 | $123.57 | 44 | $347.89 | $288.17 | 71 | $687.63 | $611.65 |
| 18 | $155.00 | $127.19 | 45 | $358.85 | $297.12 | 72 | $699.86 | $626.76 |
| 19 | $159.16 | $130.95 | 46 | $370.03 | $306.30 | 73 | $711.81 | $641.84 |
| 20 | $163.46 | $134.87 | 47 | $381.44 | $315.70 | 74 | $723.42 | $656.76 |
| 21 | $167.94 | $138.93 | 48 | $393.09 | $325.34 | 75 | $734.60 | $671.44 |
| 22 | $172.63 | $143.17 | 49 | $404.96 | $335.22 | 76 | $745.35 | $685.84 |
| 23 | $177.57 | $147.58 | 50 | $417.05 | $345.33 | 77 | $755.71 | $700.01 |
| 24 | $182.78 | $152.17 | 51 | $429.34 | $355.67 | 78 | $765.77 | $714.02 |
| 25 | $188.28 | $156.94 | 52 | $441.82 | $366.26 | 79 | $775.63 | $727.89 |
| 26 | $194.09 | $161.92 | 53 | $454.44 | $377.07 | 80 | $785.33 | $741.64 |
| 27 | $200.21 | $167.09 | 54 | $467.17 | $388.09 | 81 | $794.87 | $755.25 |
| 28 | $206.63 | $172.46 | 55 | $479.99 | $399.33 | 82 | $804.21 | $768.66 |
| 29 | $213.34 | $178.04 | 56 | $492.89 | $410.81 | 83 | $813.28 | $781.80 |
| 30 | $220.36 | $183.84 | 57 | $505.88 | $422.56 | 84 | $822.07 | $794.58 |
| 31 | $227.67 | $189.86 | 58 | $518.96 | $434.64 | 85 | $830.63 | $807.04 |
| 32 | $235.27 | $196.10 | 59 | $532.14 | $447.08 | 86 | $839.12 | $819.28 |
| 33 | $243.16 | $202.59 | 60 | $545.40 | $459.90 | 87 | $847.79 | $831.48 |
| 34 | $251.34 | $209.31 | 61 | $558.73 | $473.07 | 88 | $856.89 | $843.91 |
| 35 | $259.82 | $216.26 | 62 | $572.07 | $486.54 | 89 | $866.72 | $856.90 |
| 36 | $268.58 | $223.47 | 63 | $585.36 | $500.23 | 90 | $877.84 | $870.98 |
| 37 | $277.62 | $230.89 | 64 | $598.55 | $514.04 | 91 | $891.05 | $886.73 |
| 38 | $286.92 | $238.51 | 65 | $611.60 | $527.96 | 92 | $907.50 | $905.20 |
| 39 | $296.48 | $246.33 | 66 | $624.52 | $541.99 | 93 | $928.87 | $928.03 |
| 40 | $306.29 | $254.34 | 67 | $637.31 | $556.18 | 94 | $957.94 | $957.94 |
| 41 | $316.34 | $262.53 | 68 | $650.02 | $570.61 | | | |

*Table of Guaranteed Paid-up Insurance Benefit Rates per $1,000*
*Nonsmoker Purchase Rates*

| Age | Male | Female | Age | Male | Female | Age | Male | Female |
|-----|------|--------|-----|------|--------|-----|------|--------|
| 0 | $82.03 | $72.98 | 32 | $192.86 | $172.90 | 64 | $538.58 | $481.73 |
| 1 | $82.38 | $73.57 | 33 | $199.34 | $178.60 | 65 | $553.24 | $496.18 |
| 2 | $84.15 | $75.09 | 34 | $206.08 | $184.53 | 66 | $567.94 | $510.83 |
| 3 | $86.03 | $76.72 | 35 | $213.07 | $190.68 | 67 | $582.67 | $525.70 |
| 4 | $88.02 | $78.45 | 36 | $220.34 | $197.06 | 68 | $597.44 | $540.83 |
| 5 | $90.13 | $80.26 | 37 | $227.87 | $203.67 | 69 | $612.23 | $556.25 |
| 6 | $92.38 | $82.18 | 38 | $235.67 | $210.49 | 70 | $627.01 | $571.97 |
| 7 | $94.78 | $84.20 | 39 | $243.74 | $217.54 | 71 | $641.75 | $587.93 |
| 8 | $97.33 | $86.33 | 40 | $252.10 | $224.81 | 72 | $656.35 | $604.05 |
| 9 | $100.03 | $88.57 | 41 | $260.73 | $232.30 | 73 | $670.73 | $620.21 |
| 10 | $102.86 | $90.92 | 42 | $269.64 | $240.01 | 74 | $684.80 | $636.31 |
| 11 | $105.80 | $93.38 | 43 | $278.84 | $247.96 | 75 | $698.52 | $652.26 |
| 12 | $108.83 | $95.93 | 44 | $288.35 | $256.16 | 76 | $711.89 | $668.02 |
| 13 | $111.91 | $98.57 | 45 | $298.15 | $264.62 | 77 | $724.95 | $683.61 |
| 14 | $115.00 | $101.29 | 46 | $308.26 | $273.34 | 78 | $737.74 | $699.04 |
| 15 | $118.09 | $104.11 | 47 | $318.67 | $282.34 | 79 | $750.32 | $714.35 |
| 16 | $121.23 | $107.02 | 48 | $329.40 | $291.63 | 80 | $762.71 | $729.52 |
| 17 | $124.40 | $110.02 | 49 | $340.44 | $301.21 | 81 | $774.88 | $744.50 |
| 18 | $127.66 | $113.15 | 50 | $351.81 | $311.07 | 82 | $786.79 | $759.23 |
| 19 | $131.01 | $116.39 | 51 | $363.49 | $321.23 | 83 | $798.35 | $773.62 |
| 20 | $134.48 | $119.75 | 52 | $375.48 | $331.67 | 84 | $809.54 | $787.64 |
| 21 | $138.11 | $123.26 | 53 | $387.75 | $342.39 | 85 | $820.37 | $801.30 |
| 22 | $141.92 | $126.90 | 54 | $400.30 | $353.40 | 86 | $830.95 | $814.69 |
| 23 | $145.94 | $130.71 | 55 | $413.12 | $364.69 | 87 | $841.45 | $827.97 |
| 24 | $150.18 | $134.67 | 56 | $426.18 | $376.28 | 88 | $852.14 | $841.35 |
| 25 | $154.65 | $138.80 | 57 | $439.49 | $388.20 | 89 | $863.41 | $855.16 |
| 26 | $159.36 | $143.10 | 58 | $453.04 | $400.49 | 90 | $875.76 | $869.86 |
| 27 | $164.32 | $147.58 | 59 | $466.84 | $413.16 | 91 | $889.93 | $886.12 |
| 28 | $169.52 | $152.25 | 60 | $480.85 | $426.22 | 92 | $907.00 | $904.96 |
| 29 | $174.98 | $157.12 | 61 | $495.07 | $439.65 | 93 | $928.72 | $927.98 |
| 30 | $180.68 | $162.17 | 62 | $509.46 | $453.41 | 94 | $957.94 | $957.94 |
| 31 | $186.65 | $167.43 | 63 | $523.97 | $467.46 | | | |

Any paid-up insurance benefit purchased in excess of the death benefit payable on the original policy at the time of purchase will be subject to evidence of insurability satisfactory to us.

In all other respects, the terms, conditions and provisions of this policy will remain the same.

Signed for Kansas City Life Insurance Company, a stock company, at its Home Office, 3520 Broadway, PO Box 419139, Kansas City, MO 64141-6139.

Secretary

President

M135

**KANSAS CITY LIFE**
INSURANCE COMPANY

JUN 0 4 1989

No. **231188**

2 442 027

**Application for Insurance**

| PRIMARY INSURED | Full Name (include any former names) | Robert R. Fine Jr. | | Social Sec. No | |
|---|---|---|---|---|---|

☑ Male  ☑ Married  ☐ Divorced  ☐ Widowed
☐ Female  ☐ Single  ☐ Separated

Date of Birth

Age **27**

City and State of Birth **San Bernardino Ca.**

Street Address

City **Highland**    State **Ca.**    Zip Code

☑ Own    No. Yrs.    Prior Address (if less than 2 years)
☐ Rent   at Addr. **3**

Home Phone No.
Business Phone No.

Most convenient time **HOME** and place to contact **DAYS/EVE**

Driver's License No.

All occupations and exact duties **Truck Driver**

Employer's name and address **STATER BROS 21,700 Barton Rd Colton Ca**

Yrs. employed **7** (If less than 2, show prior occupation in Special Requests.)

| PLAN BENEFITS | Plan Name **EXECUTIVE** | ☑ Non-Smoker ☐ Smoker | Specified/Face Amount $ **73,500** | Planned/Annual Premium $ **600** |
|---|---|---|---|---|

Automatic Premium Loan?  ☑ Yes  ☐ No

Special Class Premium $

**Riders**

☑ Disability Continuance of Insurance (UL)
☐ Accidental Death $
☐ Spouse's Term_____ units (UL)
☐ Children's Term_____ units (UL)
☐ Other Insured Coverage (UL) (complete page 3)
☐ Assured Insurability $
☐ Cost of Living
☐ Waiver of Premium (Non UL)
☐ FTB-1  ☐ FTB-2  ☐ FTB-C_____ units (Non UL)
☐ Other _____

Reason for Special Class Premium

**RECEIVED**
JUN 0 9 1989
10 A0

**Universal Life Coverage Information**

☑ Option A -Level Death Benefit
☐ Option B - Increasing Death Benefit

Planned Payment Period **95**

Planned Maturity Date **95**

| PREMIUM NOTICES | Notices to: ☑ Primary Insured  ☐ Owner  ☐ Other | If other, give name and address below. |
|---|---|---|

☐ Ann  ☐ SA  ☐ Qtly  ☑ Mo  ☐ PAC  ☐ GA  ☐ CB  ☐ Single  ☐ Other _____

| BENEFICIARY with right to change | Primary | | Relationship | Equally to the survivors or to the survivor. |
|---|---|---|---|---|
| | Contingent | | Relationship | |

| OWNER if other than Primary Insured | Full Name | | Relationship to Primary Insured | |
|---|---|---|---|---|

☐ Male  ☐ Female    Street Address

City    State    Zip Code

Date of Birth    Age    City and State of Birth    ☐ Soc. Sec. No.  ☐ Taxpayer I.D. No.

Successor Owner    Relationship    (If multiple successor owners, show order and distribution in Special Requests.)

| APPLICANT if other than Primary Insured or Owner | Full Name | | Relationship to Primary Insured | |
|---|---|---|---|---|

☐ Male  ☐ Female    Street Address

City    State    Zip Code

**SPECIAL REQUESTS**    (Policy date, alternate or additional policy, existing PAC or CB number, etc.)

**Home Office Endorsements**

**Application for Insurance (continued)**

| OTHER INSUREDS (OI) | Full Name (include any former names) | | Specified Amount | Accidental Death Benefit |
|---|---|---|---|---|
| 1st OI | | ☐ Non-smoker ☐ Smoker | $ | $ |
| 2nd OI | | ☐ Non-Smoker ☐ Smoker | $ | $ |
| 3rd OI | | ☐ Non-Smoker ☐ Smoker | $ | $ |
| 4th OI | | ☐ Non-Smoker ☐ Smoker | $ | $ |
| 5th OI | | ☐ Non-Smoker ☐ Smoker | $ | $ |

Complete the following for Other Insureds over age 18. If years employed is less than 2, show prior occupation in Special Requests. If any information is identical to the Primary Insured's, write **Same.**

| Other Insureds | Social Security Number | City and State of Birth | Occupations and Exact Duties | Employer's Name and Address | Yrs. Emp. |
|---|---|---|---|---|---|
| 1st OI | | | | | |
| 2nd OI | | | | | |
| 3rd OI | | | | | |
| 4th OI | | | | | |
| 5th OI | | | | | |

| Other Insureds | Marital Status | Street Address, City, State, Zip | Telephone No. (home) (work) | Most Convenient Time and Place To Contact | Driver's License Number |
|---|---|---|---|---|---|
| 1st OI | | | ( )  ( ) | | |
| 2nd OI | | | ( )  ( ) | | |
| 3rd OI | | | ( )  ( ) | | |
| 4th OI | | | ( )  ( ) | | |
| 5th OI | | | ( )  ( ) | | |

**KANSAS CITY LIFE INSURANCE COMPANY**

No. 231188

2 442 027

**Application for Insurance (continued)**

**TEMPORARY INSURANCE AGREEMENT (TIA) HEALTH QUESTIONS**

Has(Have) the person(s) listed as proposed insured(s) in the Health Statement of the application:

1. within the **past 90 days**, been admitted to a hospital or other medical facility, been advised to be admitted, or had surgery performed or recommended? ..................................................................................

2. within the **past 2 years**, been treated for heart trouble, stroke, or cancer, or had such treatment recommended by a physician or other medical practitioner? ..................................................................................

If either of the above questions is answered **Yes** or **left blank** with respect to the Primary Insured, no agent of Kansas City Life Insurance Company is authorized to accept money and **no insurance** will take effect under the TIA. If either of the above questions is answered **Yes** with respect to any other proposed insured(s), no insurance will take effect under the TIA for that(those) individual(s).

Name(s) of individual(s) to which any **Yes** answer applies and who **do(does) not** qualify for temporary insurance:_____

_____

**REPLACEMENT** Will any existing life, health or annuity contracts be lapsed, surrendered, reissued or converted (to reduce amount, premium or period of coverage including surrender options) if the proposed policy is issued?   ☐ Yes  ☑ No   Will proposed policy be financed by loans from this or any other policy?   ☐ Yes  ☑ No   If **Yes,** give name of company(ies).

---

## Evidence of Insurability

**EXISTING INSURANCE** List details of insurance in force on all proposed insureds. If proposed insured is under age 15, provide information for parents. (**If none, indicate none.**)

| Name | Company | Year Issued | Amount of Life | Amount of ADB | Annual Premium |
|------|---------|-------------|----------------|---------------|----------------|
|      | 1ST Colony Life | 87 | $100 | $ | $ 100 |
|      |         |             |                |               |                |
|      |         |             |                |               |                |

**INSURANCE HISTORY**
1. In the **past 3 years** have the proposed insureds applied for life or health insurance or reinstatement without receiving it exactly as requested?   ☐ Yes  ☑ No
2. Do any of the proposed insureds have an application for life or health insurance pending in any other company or intend to apply for such insurance within the **next 10 days?**   ☐ Yes  ☑ No   If 1 or 2 answered **Yes,** please explain.

**TOBACCO USE** Have any proposed insureds used tobacco in any form in the past 12 months?   ☐ Yes  ☑ No   If Yes, indicate proposed insured and type of tobacco (pipe, cigar, cigarette or other.)
Did any proposed insureds use tobacco and stop?   ☐ Yes  ☑ No   If Yes, indicate proposed insured and number of years since stopping.

**HAZARDOUS ACTIVITIES**
1. In the **past 3 years** have the proposed insureds flown other than as a scheduled airline passenger or do such individuals intend to engage in any such flying in the **next 12 months?**   ☐ Yes  ☑ No
2. In the **past 3 years** have the proposed insureds engaged in or do such individuals intend to engage in any hazardous sport or hobby such as skin diving, motor vehicle racing, skydiving, ballooning, hang gliding, mountain or rock climbing or ultralight flying?   ☐ Yes  ☑ No
If 1 or 2 above answered **Yes,** complete questionnaire on page 12.

**JUVENILE INSUREDS**

| If any proposed insured(s) is(are) less than 1, what was birth weight? | If any proposed insured(s) is(are) age 5-15, what is grade in school? |
|---|---|

If the amount in force and applied for on any proposed insured is more than on brothers and sisters, please explain.

A100

**Application for Insurance (continued)**

| HEALTH STATEMENT — Print full names of all to be insured. | Relationship to Primary Insured | Birthdate | | | Age | Sex | Build | | | Weight change in past year | | Present Insurance Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Month | Day | Year | | | Ft. | In. | Lb. | Gain | Loss | |
| 1. *Primary Insured* | X | X | X | X | X | X | 5 | 11 | 205 | 0 | | X |
| 2. | | | | | | | | | | | | |
| 3. | | | | | | | | | | | | |
| 4. | | | | | | | | | | | | |
| 5. | | | | | | | | | | | | |
| 6. | | | | | | | | | | | | |

In items 1 through 11 below the word "you" refers to all proposed insureds listed above. To the best of your knowledge and belief:

1. Within the **past 5 years** have you:
   a. been examined, advised or treated by any physician or other practitioner? . . . .
   b. been a patient of, or do you intend to enter, a hospital, clinic or other institution for consultation or treatment or surgery? . . . . . . . . . . . . . . . . . . . . .
   c. had any electrocardiogram, X-ray, or other diagnostic tests? . . . . . . . . . . . . . . .

2. During the **last 10 years** have you ever had any indication or diagnosis of disease or disorder of:
   a. brain or nervous system - mental illness, convulsions, epilepsy or paralysis? . .
   b. sight or hearing? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
   c. the blood or had tumor or cancer? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
   d. heart or blood vessels - heart murmur, pain or pressure in chest, palpitations or rheumatic fever? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
   e. lungs - asthma, emphysema, bronchitis or tuberculosis? . . . . . . . . . . . . . . . . .
   f. digestive system - indigestion, ulcer, gastritis, liver, gallbladder, intestine or rectum, rupture (hernia)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
   g. genito-urinary system - kidney, bladder, prostate, albumin, blood, pus or sugar in urine? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
   h. bone, joint or muscles, back or spine - arthritis, gout or rheumatism? . . . . . . .
   i. thyroid, glandular trouble or diabetes? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
   j. Acquired Immune Deficiency Syndrome (AIDS) or "AIDS" Related Complex (ARC)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

3. Have you ever been diagnosed or treated for any sexually transmitted disease including syphilis, gonorrhea, herpes, chlamydia, condyloma acuminata (anal or genital warts)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

4. Have you ever had a diagnosis of or treatment for high blood pressure? . . . . . . . . .

5. Do you take prescription medicine? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

6. Have you sought advice, been treated or arrested for the use of alcohol? . . . . . . . . .

7. Are you currently using or have you ever received treatment or counseling for the use of marijuana, heroin, cocaine, amphetamines, barbituates, hallucinogenic agents or opium or its derivatives? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

8. Have you any disorder of pregnancy, menstruation, breasts, uterus, ovaries or pelvis? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

9. Are you pregnant? Date due? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

10. Do any of the family members listed above live outside of the Primary Insured's household? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

11. Are you now free from disease? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

12. For Proposed insured(a) and Other Insureds(b) indicate below any **family history** of diabetes, cancer, high blood pressure, heart or kidney disease, mental illness or suicide. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**Give DETAILS** to **Yes** answers to questions 1-10 or a **No** answer to question 11. Identify proposed insured(s), question, specify conditions, severity, dates, duration, aftereffects and names and addresses of all attending physicians and medical facilities.

| Relationship | Age if Living a | b | Family History or Cause of Death | Age at Death a | b |
|---|---|---|---|---|---|
| Father | 52 | | | | |
| Mother | 50 | | | | |
| Brothers and Sisters | 22 | | | | |

| | | | |
|---|---|---|---|
| Names and addresses of personal or family physicians (If none, indicate none.) | | | |
| Date and reason last consulted | | Clinic or VA Claim Number | |

A100



**KANSAS CITY LIFE**
INSURANCE COMPANY

No. **231188**

**2 44~ 027**

**Application for Insurance (continued)**

**AGREEMENT AND SIGNATURES**    It is understood and agreed as follows:

1. The statements and answers recorded in all parts of this application, Number **231188** _____ are to the best of my(our) knowledge and belief, true and complete.

2. This application, and the answers to any required medical exam, will become a part of any policy issued on it.

3. No agent has the authority to waive any of the Company's rights or rules, or to make or change any contract.

4. The insurance applied for will take effect only after the following occur while the proposed insured(s) is(are) living and his/her(their) health is as stated in this application: (1) the policy is delivered to the applicant; and (2) the first full premium is paid in cash. The only exception to this is provided in the Temporary Insurance Agreement if the agreement has been issued and the advance payment required by the agreement has been made.

5. Any changes or additions made by the Company in "Home Office Endorsements" will be ratified by the applicant's acceptance of any life insurance policy issued on this application. However, any change in the classification, amount of insurance, issue age, plan of insurance or any benefits will not be effective unless accepted in writing by me(us).

6. I(We) have received the Privacy Notice which explains my(our) rights under the Fair Credit Reporting Act.

7. I(We) have paid $ **58 —** _____ to the agent in exchange for the Temporary Insurance Agreement and I(we) acknowledge that I(we) fully understand and accept its terms.

AUTHORIZATION: I(We) authorize the following to give information (defined below) to Kansas City Life Insurance Company or any person or group acting on the part of Kansas City Life: any medical professional, medical care institution, the Medical Information Bureau, Inc., insurer, reinsurer, government agency consumer reporting agency or employer. "Information" means facts of: a medical nature in regard to my(our) physical or mental condition; employment; other insurance coverage; or any other non-medical facts. I(We) understand that this information will be used by Kansas City Life Insurance Company to determine eligibility for insurance. I(We) agree this Authorization is valid for two and one-half years from the date signed. I(We) know that I(we) have a right to receive a copy of this Authorization upon request. I(We) agree that a photographic copy of this Authorization is as valid as the original.

Dated at   *HIGHLAND*   Ca.   this   *3*   day of   *JUNE*   18*9*

_Rubin R. _____   
**Primary Insured's Signature** (if under 15, parent/guardian signature)

_____   
**Applicant's Signature** (if other than Primary Insured)

_____   
**Spouse's Signature** (if FTB applied for)

_____   
**First Other Insured's Signature** (if over age 18)

_____   
**Second Other Insured's Signature** (if over age 18)

_____   
**Third Other Insured's Signature** (if over age 18)

_____   
**Fourth Other Insured's Signature** (if over age 18)

_____   
**Fifth Other Insured's Signature** (if over age 18)

**STATEMENT OF AGENT**    I certify that the statements of the Primary Insured, applicant and any other proposed insured(s) have been correctly recorded in this application and that any premium payment shown in item 7 above has been collected by me and a Temporary Insurance Agreement given to the applicant.

To the best of my knowledge the insurance applied for in this application ☐ will ☑ will not replace existing insurance.

To your knowledge has any Proposed Insured used tobacco in any form within the past year?   ☑ Yes   ☐ No

Were all proposed insureds seen by you at the time of application?   ☑ Yes   ☐ No.   If **No**, an examination is required.

*32847*   
**Agent Code**   **Signature of Writing Agent**   *Rixie*

_____   
**Agent Code**   **Signature of Other Agent(s)** (if split case)

*1140*   *Rosenberg*   
**Agency Code**   **Agency**

A186

## Agent's Report

### ASK THE APPLICANT FOR THE FOLLOWING INFORMATION

1. Annual earned income $_____
2. Annual household income $_____
3. Spouse's  occupation _____
4. Spouse's age _____
5. Number of dependent children _____
6. Age of youngest child _____

7. Highest level of education

| | Primary Insured | Spouse |
|---|---|---|
| Some high school | ☐ | ☐ |
| High school graduate | ☑ | ☑ |
| Some college, trade or technical school | ☐ | ☐ |
| College graduate | ☐ | ☐ |
| Post graduate study | ☐ | ☐ |

### COMPLETE FOR ALL SALES

1. What medical arrangements have been made?
   (If required by company guidelines)
   Doctor's Name/
   Examining Facility  *NONE*
   Date of Exam
   Date of EKG

2. Number of years you have
   known Primary Insured *at sale*

3. Source of Primary Insured
   ☐ 1. Existing client
   ☐ 2. Relative to client
   ☑ 3. Referred lead
   ☐ 4. Orphan policyowner
   ☐ 5. Cold call
   ☐ 6. Pre-Approach letter
   ☐ 7. Acquaintance
   ☐ 8. Other _____

4. Type of relationship
   ☑ 1. Business
   ☐ 2. Civic
   ☐ 3. Social
   ☐ 4. Other _____

5. Initial door opener
   ☑ 1. Personal insurance
   ☐ 2. Business insurance
   ☐ 3. Qualified plan
   ☐ 4. Group
   ☐ 5. Other _____

6. Number of interviews to close this sale ___1___

7. Time this sale was made
   ___1___:_____ ☐ a.m.  ☑ p.m.

8. Location of sale
   ☐ 1. Agent's office
   ☐ 2. Primary Insured's workplace
   ☐ 3. Primary Insured's home
   ☐ 4. Other _____

9. Description of Primary Insured's community
   ☑ 1. City
   ☐ 2. Town
   ☐ 3. Suburb
   ☐ 4. Rural

### COMPLETE FOR PERSONAL INSURANCE SALES

1. Primary purpose of sale
   ☐ 1. Family income
   ☐ 2. Mortgage protection
   ☐ 3. Education
   ☑ 4. Retirement
   ☐ 5. Debt coverage
   ☐ 6. Estate planning
   ☐ 7. Other _____

2. Number of household members Insured by
   Kansas City Life (including Primary Insured) _____

### COMPLETE FOR BUSINESS INSURANCE SALES

1. Primary purpose of sale
   ☐ 1. Split dollar
   ☐ 2. Deferred compensation
   ☐ 3. Key employee
   ☐ 4. Executive bonus
   ☐ 5. Buy/Sell arrangement
   ☐ 6. Pension or profit sharing
   ☐ 7. Other _____

2. Number of years in business _____

3. Type of business
   ☐ 1. Corporation
   ☐ 2. Sub-S corporation
   ☐ 3. Partnership
   ☐ 4. Sole proprietor

4. Approximate net worth as of prior
   fiscal year $_____

*Flexible Premium*
*Adjustable Death Benefit*
*Life Policy - Nonparticipating*

Adjustable death benefit. Death proceeds payable at death of Insured prior to maturity date. Cash surrender value, if any, payable on maturity date. Flexible premiums payable until maturity date or prior death of insured.

If you have any questions concerning this policy or if anyone suggests that you change or replace this policy, please contact your Kansas City Life agent or the Home Office of the Company.



**KANSAS CITY LIFE**
**INSURANCE COMPANY**

J118                    *3520 Broadway • P O Box 419139 • Kansas City, MO 64141-6139*



## KANSAS CITY LIFE
### INSURANCE COMPANY

*Since 1895*

**MODIFICATION ENDORSEMENT**

4-1-97 G77

Application No. _____ 00000 _____          Policy No. _____ 2 442 027 _____

The above numbered policy cannot be issued as applied for and is offered subject to the following modification(s):

INSURED: ROBERT R FINE, JR

THE INCREASE AMOUNT HAS BEEN ISSUED WITH A SPECIAL CLASS RATING OF $7.00 PER THOUSAND FOR TWO YEARS DUE TO CANCER HISTORY. THE MODIFIED MINIMUM ANNUAL PREMIUM IS $1447.68.

### Agreement and Signatures

I (we) agree that the above Modification Endorsement amends and forms a part of the above numbered policy. The modification(s) contained in this document will be binding on all persons who have or claim any interest under this policy. No insurance will take effect under the policy until this endorsement is signed and accepted and the first premium is paid in full in cash.

Dated at _____ this _____ day of _____, 19 **97**.

_____
Owner's Signature
ROBERT R FINE, JR

AFTER SIGNING, RETURN TO THE NEW BUSINESS DEPARTMENT.
ONE COPY IS ATTACHED IN THE POLICY.

M186



# KANSAS CITY LIFE
# INSURANCE COMPANY
*Since 1895*

*Policy Amendment*

| INSURED | POLICY NUMBER |
|---|---|
| ROBERT R FINE, JR | 2 442 027 |

This policy has been amended as follows:

In consideration of the statements made on your request dated JANUARY 2, 1997, we have made the following changes on this policy.

### SPECIFIED AMOUNT INCREASED TO $150,000
### THE INCREASED AMOUNT OF $76,500 RATED $7.00 PER THOUSAND
### FOR TWO YEARS

It is understood and agreed that the changes are effective APRIL 3, 1997.

- Continued -

Signed for Kansas City Life Insurance Company, a stock company, at its Home Office, 3520 Broadway, Post Office Box 419139, Kansas City, Missouri 64141-6139.

Secretary

President

182004-80



**KANSAS CITY LIFE
INSURANCE COMPANY**

*Since 1895*

Page 2

## *Policy Amendment*

INSURED
ROBERT R FINE, JR

POLICY NUMBER
2 442 027

This policy has been amended as follows:

In consideration of the changes requested the minimum renewal premium for this policy effective
APRIL 3, 1997, is $1447.68 to the next policy anniversary.

The planned premiums are as follows:

| | |
|---|---|
| Annual | $1447.68 |
| Semiannual | $723.84 |
| Quarterly | $361.92 |
| Monthly | $0.00 |
| Special Billing (Monthly) | $120.64 |

A copy of the request for the changes is attached.

A new Table of Surrender Charges is attached.

All other terms and conditions of this policy remain as stated therein.

This Policy Amendment is being issued to you in lieu of issuing a revised page 4 for your policy.

Dated at KANSAS CITY, MISSOURI on April 1, 1997.

Signed for Kansas City Life Insurance Company, a stock company, at its Home Office,
3520 Broadway, Post Office Box 419139, Kansas City, Missouri 64141-6139.

Secretary

President

192004-80

SECTION 3.   EXPENSE AND SURRENDER CHARGES (CONT.)    DATE PREPARED: 04/01/199

INSURED
  ROBERT R FINE, JR                                    POLICY NUMBER
                                                         2442027
INCREASE AMOUNT
  $76,500                            TOTAL SPECIFIED AMOUNT
                                        $150,000
EFFECTIVE DATE OF INCREASE
  04/03/1997

        TABLE OF SURRENDER CHARGES APPLICABLE TO THIS INCREASE

                    INCREASE              SURRENDER
                    YEAR *               CHARGE
                    ---------            ---------
                      0-1                   $690.03
                       2                  $1,598.85
                       3                  $1,598.85
                       4                  $1,598.85
                       5                  $1,548.36
                       6                  $1,548.36
                       7                  $1,531.53
                       8                  $1,481.04
                       9                  $1,481.04
                      10                  $1,481.04
                      11                  $1,228.59
                      12                    $992.97
                      13                    $740.52
                      14                    $488.07
                      15                    $252.45
                      16                       .00

*INCREASE YEAR MEANS COMPLETED YEARS SINCE THE EFFECTIVE DATE OF
THE INCREASE TO THE SPECIFIED AMOUNT.

THIS TABLE IS BASED ON THE INCREASE PORTION OF THE SPECIFIED
AMOUNT.   THESE SURRENDER CHARGES ARE IN ADDITION TO ALL CURRENTLY
APPLICABLE SURRENDER CHARGES.   WHEN ANOTHER REQUESTED INCREASE TO
THE SPECIFIED AMOUNT IS MADE THE SURRENDER CHARGES WILL INCREASE
AND WE WILL PROVIDE AN ADDITIONAL TABLE.

A DECREASE IN THE SPECIFIED AMOUNT WILL NOT DECREASE THESE
SURRENDER CHARGES.

THE SURRENDER CHARGES LISTED ABOVE ARE  APPLICABLE AT THE END OF
INCREASE YEAR.   AFTER THE FIRST INCREASE YEAR THE SURRENDER
CHARGES BETWEEN YEARS WILL BE PRO-RATED.   THE CHARGE FOR THE ENTIRE
FIRST POLICY YEAR WILL BE LEVEL.   AFTER THE  COMPLETION OF THE
16TH INCREASE YEAR THERE WILL NO LONGER BE A SURRENDER CHARGE
APPLICABLE TO THIS INCREASE.

KANSAS CITY LIFE
INSURANCE COMPANY

JAN 0 3 1997

**Application for Changes
to Existing Policy**

**Evidence Required** • Increase Volume • Add Rider • Change to Option B • Reduce Rating • Remove Rating • AI Option with additional benefits • Conversion with additional benefits, rate class change or volume increase. (Complete pages 1-4.)
**Evidence Not Required** • Decrease Volume • Delete Rider • Change to Option A • AI Option • Conversion. (Complete page 1 only.)
**Note:** • When adding OI rider, indicate CTI or STI deletions, if applicable.
• When changing coverage options, the specified amount will be adjusted appropriately, unless otherwise indicated.
• When changing volume, indicate any desired adjustment in ADB.

## EXISTING PLAN INFORMATION

Policy Number (s) 2442027    Insured's Name ROBERT R. FINE JR.    Plan Name THE EXECUTIVE    Specified/Face Amount $ 73,500

## PERSONAL DATA

Address and Phone No. 6644 SEINE HIGHLAND CALIF 92346    ☐ Male ☐ Female    Date of Birth

Employer, Address and Phone No. STATE OF CALIFORNIA

Occupation and Duties CORRECTIONAL OFFICER    Years Employed 4

## REQUESTED PLAN INFORMATION

Plan Name HE EXECUTIVE

New Face/Specified Amount $ 150,000

New Universal Life Coverage Option   ☑ Option A - Level Death Benefit   ☐ Option B - Increasing Death Benefit

Increase Specified Amount by amount of cash value?   ☐ Yes   ☑ No

Effective Date (conversion only) _____

New Planned Annual Premium $ 1020

AI Option Date _____

## Riders/Benefits

| Add | Delete | | Add | Delete | |
|-----|--------|--|-----|--------|--|
| ☐ | ☐ | Disability Continuance of Insurance (UL only) | ☐ | ☐ | Pension Increase (UL only) |
| ☐ | ☐ | Disability Payment of Premium (UL only) | ☐ | ☐ | Waiver of Premium (Non UL) |
| ☐ | ☐ | Guaranteed Endowment (UL only) | ☐ | ☐ | Accidental Death $_____ |
| ☐ | ☐ | Terminal Illness (UL only) | ☐ | ☐ | Assured Insurability $_____ |
| ☐ | ☐ | Long Term Care (UL only) | ☐ | ☐ | Survivorship Purchase Option |
| ☐ | ☐ | Other Insured Coverage (UL only) | ☐ | ☐ | Spouse's Term _____ units |
| ☐ | ☐ | Extra Protection Rider (UL only) $_____ | ☐ | ☐ | Children's Term _____ units |
| ☐ | ☐ | Cost of Living (UL only) | ☐ | ☐ | Other _____ |

## Other Policy Change Information

Is a removal or reduction in rating requested?   ☐ Yes   ☑ No    Premium Mode   ☐ Ann  ☐ SA  ☐ Qtly  ☑ Mo  ☐ PAC  ☐ GA  ☐ CB  ☐ FAP  ☐ Single  ☐ Other _____

Primary Beneficiary *(with right to change)
Name(s), Relationship(s) to the Insured, Addresses, and Social Security Numbers for all beneficiaries.

ESTATE

Contingent Beneficiary *(with right to change)
Name(s), Relationship(s) to the Insured, Addresses, and Social Security Numbers for all beneficiaries.

*Unless otherwise stated, benefits are payable equally to the named beneficiary(s) or to the survivor or survivors.

Owner's Name and Address

Relationship to Primary Insured

☐ Male   ☐ Female    Date of Birth_____    Age_____    City and State of Birth_____    SSN or Tax ID_____

Successor Owner _____    Relationship to Insured _____

(If multiple successor owners, show order and distribution in Special Requests.)

**Agreement and Signatures:** I(We) understand and agree that the change requested will be effective on the latest of the following: (1) the date the change is approved at the Home Office of the Company; (2) the date specified in the policy or rider under which the change is made; or (3) the date any required premium has been paid.

Dated at HIGHLAND, CALIFORNIA this 2ND day of JANUARY, 19 97.

Owner's Signature

Creditor Beneficiary or Assignee's Signature (if any)

A134-M

Page 1

## OTHER INSUREDS (OI)

|  | Full Name | Marital Status | Specified Amount |  |
|---|---|---|---|---|
| 1st OI | | | $ | ☐ ADB $ |
| 2nd OI | | | $ | ☐ ADB $ |
| | First        Middle        Last | | | |

Complete the following for all Other Insureds. If years employed is less than 2, show prior occupation in Special Requests. If any information is identical to the Primary Insured's, write Same.

| | Social Security Number | State of Birth | Occupations and Exact Duties | Employer's Name and Address | Yrs. Emp. |
|---|---|---|---|---|---|
| 1st OI | | | | | |
| 2nd OI | | | | | |

| | Street Address, City, State, Zip | Telephone No. ☐ (home)   ☐ (work) | Most Convenient Time and Place to Contact | Driver's License Number & State Issued |
|---|---|---|---|---|
| 1st OI | | ( ) | | |
| 2nd OI | | ( ) | | |

## REPLACEMENT

1. Will any existing life, health or annuity contract be lapsed, reissued, surrendered, or converted (to reduce amount, premium or period of coverage including surrender options) if the proposed policy is issued? ........................................... ☐ Yes  ☑ No
2. Will the proposed policy be financed by loans from this or any other policy? ................................................. ☐ Yes  ☑ No
   If Yes, give name of company(ies) and amount(s)_____
3. Will the change in existing coverage be part of an IRC Section 1035 Exchange? ................................................. ☐ Yes  ☑ No

## EVIDENCE OF INSURABILITY

### Insurance History

| Proposed Insured(s) | Company | Year Issued | Insurance Amount | ADB Amount |
|---|---|---|---|---|
| ROBERT | LL LIFE | 89 | $ 73500 | $ |
| | | | $ | $ |

1. In the past 3 years have any of the Proposed Insured(s) applied for life or health insurance or reinstatement thereof without receiving it exactly as requested? ........................................................................................... ☐ Yes  ☑ No
2. Do any of the Proposed Insured(s) have an application for life or health insurance pending in any other company or intend to apply for such insurance within the next 10 days? ........................................................................ ☐ Yes  ☑ No

Details to all Yes answers:_____

### Non Medical Underwriting Questions
Questions apply to all Proposed Insureds.

1. Do any of the family members listed on this application live outside the Primary Insured's household? ...........................
2. Are any Proposed Insureds not a U.S. citizen? ................................................................................
   If Yes, how long has(have) the Proposed Insured(s) been in the United States? _____
   What type Visa? _____ Visa Number? _____
3. Have any of the Proposed Insureds in the last 12 months, or do any of the Proposed Insureds within the next 24 months, intend to travel or reside outside the continental U.S. or Canada? If Yes, explain below. .......................................
4. In the past 3 years, has any Proposed Insured:
   a. been cited or convicted for any moving motor vehicle violations? If Yes, explain below. ...................................
   b. had a driver's license suspended or revoked? If Yes, explain below. ...............................................
   c. flown as a pilot, co-pilot, or crew member of an aircraft? If Yes, complete the Aviation Questionnaire. ...................
   d. engaged in sky or scuba diving, hang gliding, racing or any other hazardous sport or hobby? If Yes, complete the Avocations Questionnaire. .......................................................................................
5. Has any Proposed Insured ever been convicted of a felony? If Yes, explain below. ...........................................
6. For Proposed Insured(a) and Other Insureds(b), is there any family history of diabetes, cancer, high blood pressure, heart or kidney disease, mental illness, suicide or stroke? If Yes, explain below. .............................................

| Relationship | Age if Living | | Family History or Cause of Death | Age at death | |
|---|---|---|---|---|---|
| | a | b | | a | b |
| Father | | | | | |
| Mother | | | | | |
| Brothers and Sisters | | | YES  00 Nor | | |

Details to all Yes answers:_____

# HEALTH STATEMENT

| Print full names of all to be insured. | Relationship to Primary Insured | Birthdate | | | Age | Sex | Build | | | *Weight Change in past year | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Month | Day | Year | | | Ft. | In. | Lb. | Gain | Loss |
| 1. Primary Insured | X | X | X | X | X | X | 5 | 11 | 232 | | |
| 2. | | | | | | | | | | | |
| 3. | | | | | | | | | | | |
| 4. | | | | | | | | | | | |
| 5. | | | | | | | | | | | |
| 6. | | | | | | | | | | | |

## *Questions apply to all Proposed Insureds

Yes   No

1. Do you take prescription medicine? ........................................................
2. Are you currently pregnant? Due Date? ................................................
3. Have you ever used or received treatment or counseling for the use of marijuana, heroin, cocaine, amphetamines, barbiturates, hallucinogenic agents or opium or its derivatives? ...........................................................
4. Have any of the Proposed Insureds used any form of nicotine/tobacco in the last 12 months? (i.e., cigar, pipe, smokeless tobacco, cigarettes, etc.).........
   If cigarettes, how many packs per day? _____
5. Have you sought advice, been treated or arrested for the use of alcohol? .....

During the **last 5 years** have you:
6. been hospitalized or had medical advice, diagnostic tests recommended, or treatment by a physician or other medical practitioner? ...............................

During the **last 10 years** have you been diagnosed or treated for any disease or disorder of:
7. brain and nervous system  -  mental illness, epilepsy, seizures, stroke, paralysis? ...........................................................................................................
8. sight or hearing? ....................................................................................
9. blood - anemia or leukemia? ..............................................................
10. tumor or cancer? ...................................................................................
11. heart/blood vessels  -  murmur, chest pain or pressure, palpitations, heart attack? ...................................................................................................
12. blood pressure? ....................................................................................
13. thyroid or glandular trouble? ..............................................................
14. lungs - asthma, emphysema, tuberculosis? ........................................
15. digestive system - ulcer, intestines or rectum, polyps, colitis? ...............
16. liver - elevated enzymes, cirrhosis, hepatitis? .................................
17. diabetes - sugar in urine? ...................................................................
18. kidney/bladder or prostate  - albumin, blood or pus in urine? ...................
19. bone, joint, muscles, back or spine - arthritis? ..................................
20. breasts, uterus, ovaries? .......................................................................
21. menstruation or pregnancy? .................................................................

Have you ever been diagnosed or treated for:
22. a sexually transmitted disease? ...........................................................
23. Acquired Immune Deficiency Syndrome (AIDS); or have you tested positive for the HIV antibodies, as part of the process of obtaining insurance? .......

Names, addresses and phone numbers of personal or family physicians. (If none, list last physician, clinic or hospital consulted.)

*Give DETAILS to Yes answers. Identify Proposed Insured(s), question, specify conditions, severity, dates, duration, aftereffects, weight gain or loss, and names and addresses of all attending physicians and medical facilities.

Date and reason last consulted

Clinic or VA Claim Number

AHM-M

**Special Requests** (Address changes, ~~ing PAC or CB number,~~ billing notice change  .c.) **Home Office Endorsements**

*ADD TO PAC P-202442027*
*CHANGE AGENT OF RECORD TO*
*GERALD L. CLARK ON POLICY*
*244 2027*

## Agreement and Signatures

**It is understood and agreed as follows:**

1. The statements and answers recorded in all parts of this application are true and complete.
2. No information regarding any Proposed Insured will be considered known by the Company unless explicitly set out in writing on this application.
3. This application, and the answers to any required medical exam, will become a part of any policy issued on it.
4. No agent has the authority to waive any of the Company's rights or rules, or to make or change any contract.
5. The insurance applied for will take effect only after the following occur while the Proposed Insured(s) is(are) living and his/her(their) health is as stated in this application: (1) the policy is delivered to the applicant; and (2) the first full premium is paid in cash. The only exception to this is provided in the Temporary Insurance Agreement if the agreement has been issued and the advance payment required by the agreement has been made.
6. Any changes or additions made by the Company in "Home Office Endorsements" will be ratified by the applicant's acceptance of any life insurance policy issued on this application. However, any change in the classification, amount of insurance, issue age, plan of insurance or any benefits will not be effective unless accepted in writing by me(us).
7. I(We) have received the Notice of Information Practices which explains my(our) rights under the Fair Credit Reporting Act.
8. I(We) have paid $_____ *C D D*_____ * to the agent in exchange for the Temporary Insurance Agreement and I(we) acknowledge that I(we) fully understand and accept its terms.

**\*All premium checks must be made payable to Kansas City Life Insurance Company.**
**Do not make check payable to the agent or leave the payee blank.**

AUTHORIZATION: I(We) authorize the following to give information (defined below) to Kansas City Life or any person or group acting on the part of Kansas City Life: any medical professional, medical care institution, the Medical Information Bureau, Inc., insurer, reinsurer, government agency, consumer reporting agency or employer. "Information" means facts of: a medical nature in regard to my(our) physical or mental condition; employment; other insurance coverage; or any other non-medical facts. I(We) understand that this information will be used by Kansas City Life to determine eligibility for insurance. I(We) agree this Authorization is valid for two and one-half years from the date signed. I(We) know that I(we) have a right to receive a copy of this Authorization upon request. I(We) agree that a photographic copy of this Authorization is as valid as the original.

Dated at __*ALGUCAWS CALIF*__ this __*21st*__ day of __*JANUARY*__, 19__*57*__.

X _____
**Primary Insured's Signature** (if under 15, parent/guardian signature)

_____
**Applicant's Signature** (if other than Primary Insured)

_____
**Spouse's Signature** (if spouse coverage applied for)

_____
**First Other Insured's Signature** (if over age 18)

_____
**Second Other Insured's Signature** (if over age 18)

## Statement of Agent

I certify that the statements of the Primary Insured, applicant and any other Proposed Insured(s) have been correctly recorded in this application and that any premium payment shown in item 8 above has been collected by me and a Temporary Insurance Agreement given to the applicant.

To the best of my knowledge the insurance applied for in this application ☐ will ☑ will not replace existing insurance.

Were all Proposed Insureds seen by you at the time of application? ☑ Yes ☐ No    If No, an examination may be required.

_____
Agency Code    **Signature of Writing Agent**

_____
Agent Code    **Signature of Other Agent(s)** (if split case)

*4784* | *CLARK*
Agency Code    Agency

A134-M